120 N.J. Super. 118 (1972)
293 A.2d 426
MUNICIPAL SANITARY LANDFILL AUTHORITY, A JOINT VENTURE OF THE STATE OF NEW JERSEY, APPELLANT
v.
THE HACKENSACK MEADOWLANDS DEVELOPMENT COMMISSION, AN AGENCY OF THE STATE OF NEW JERSEY, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued June 19, 1972.
Decided July 24, 1972.
*120 Before Judges COLLESTER, MINTZ and LYNCH.
Mr. Julius B. Poppinga argued the cause for appellant (Messrs. McCarter & English, attorneys; Messrs. Richard C. Cooper and John R. Drosdick on the briefs).
Mr. Joseph M. Clayton, Jr., Deputy Attorney General, argued the cause for respondent (Mr. George F. Kugler, Jr., Attorney General of New Jersey, attorney).
*121 The opinion of the court was delivered by LYNCH, J.A.D.
Appellant Municipal Sanitary Landfill Authority (MSLA), which conducts a private landfill operation within the jurisdiction of defendant The Hackensack Meadowlands Development Commission (Commission), challenges the adoption by the Commission of rules and regulations governing the location, construction and operation of sanitary landfills within the district.
Appellant's contentions are that: 1) the Commission had no power to promulgate the regulations; 2) the Commission is a "competitor" of defendant and, therefore, the Legislature did not intend to give it the power of regulation of plaintiff's operation; 3) the regulations are discriminatory; 4) the fees imposed in § 15 of the regulations are unreasonable; 5) the regulations are void for vagueness; 6) the Commission did not support its regulations by evidence at the public hearing prior to their adoption.
The Commission was established by the enactment of the Hackensack Meadowlands Reclamation And Development Act (L. 1968, c. 404), to oversee the orderly development of the Hackensack Meadowlands. N.J.S.A. 13:17-1, 5. The statute recites that there are approximately 21,000 acres of salt water swamps, meadows and marshes commonly known as Meadowlands in the lower Hackensack River basin; "* * * that extensive portions of this area have so far resisted comprehensive development because of their low elevation, exposure to tidal waters, unfavorable soil composition, and, in some instances, their distribution among many municipalities; that this land acreage is a land resource of incalculable opportunity for new jobs, homes and recreational sites, which may be lost to the State through piecemeal reclamation and unplanned development; * * *." N.J.S.A. 13:17-1. The statute further states "* * * that these areas need special protection from air and water pollution and special arrangements for the provision of facilities for the disposal of solid waste; * * *" (emphasis *122 added)[1] and that it is the purpose of the Act to meet the cited needs and accomplish the objectives of redevelopment "by providing for a Commission transcending municipal boundaries and a committee representing municipal interests which will act in concert to reclaim, plan, develop and redevelop the Hackensack meadowlands; * * *."
The over-all duty imposed upon the Commission, then, is to "reclaim, plan, develop and redevelop the Hackensack meadowlands." That is its raison d'etre. A very substantial portion of the Meadowlands is occupied by what are euphemistically called "sanitary landfills," and in more common parlance, garbage dumps. 30,000 tons of garbage per week are deposited in those landfills. It is recognized, and the Commission found below, that a landfill operation "* * * is not a desirable use of the land. Sanitary landfills conducted on virgin land forever ruin the possibility of preserving the site for conservation. Additionally, such landfill operations can have an adverse effect on the ecological balance of the surrounding area. A sanitary landfill operation also has severe limiting effects on future development of the property. Problems of settlement, gas generation, and fires make it difficult to construct structures on former landfill sites." Clearly, then, landfills are a substantial impediment to the Commission's fulfillment of its task to redevelop the meadowlands. It is inconceivable that the Commission, having been mandated to "reclaim, plan, develop and redevelop" the meadowlands should not have the power to regulate that substantial part of them which presents one of the greatest obstructions to reclamation and redevelopment. If it had no such right, the objective of this important legislation would be completely frustrated and largely meaningless. The statute cannot be so construed.

*123 (1)

Plaintiff's contention that the Commission has no power to promulgate the regulations.
While appellant's Point I asserts that the Commission "had no power to promulgate the regulations," the argument retreats from that position by saying: "MSLA does not contend that the Commission was not granted any power to regulate sanitary landfills; however the regulations, as adopted, regulate aspects of sanitary landfill operations specifically delegated to other agencies. To the extent that the Commission's asserted powers overlap the powers expressly delegated to others, the Legislature should be assumed not to have delegated such concurrent powers to the Commission." It is then asserted that concurrent power to regulate landfill operations has been granted by the Legislature, respectively to the Department of Environmental Protection (DEP) under N.J.S.A. 13:1D-1 et seq. and to the Board of Public Utilities (PUC), pursuant to N.J.S.A. 48:13A-4 and 6. The position taken amounts to a contention that, so long as there has been a concurrent grant of powers of regulation to the DEP and the PUC, the grant of similar powers to the Commission must be negated. In other words, it is claimed that the Commission's authority over landfill operations has been preempted by the named State Agencies. Such a position misconceives the law. In an analogous situation of asserted "preemption" (whether state statutes had preempted the municipal power to regulate "blockbusting"), Chief Justice Weintraub said in Summer v. Teaneck, 53 N.J. 548 (1969):
A municipality may not contradict a policy the Legislature establishes. * * * Hence an ordinance will fall if it permits what a statute expressly forbids or forbids what a statute expressly authorizes. Even absent such evident conflict, a municipality may be unable to exercise a power it would otherwise have if the Legislature has preempted the field. This follows from the basic principle that local government may not act contrary to State law. But an intent to occupy the field must appear clearly. * * * It is not enough that the Legislature has legislated upon the subject, for the question is whether the Legislature *124 intended its action to preclude the exercise of the delegated police power. * * * Hence the fact that the State has licensed a calling may not be enough to bar local licensure to protect an additional value of local concern. * * * The ultimate question is whether, upon a survey of all the interests involved in the subject, it can be said with confidence that the Legislature intended to immobilize the municipalities from dealing with local aspects otherwise within their power to act. [at 554, 555; emphasis added].
It certainly cannot be said that, assuming a grant of regulatory powers over landfill operations to DEP and PUC here, and to the Commission, it was intended that the Commission be "immobilized" from regulating this important facet of its territorial and functional jurisdiction.
With more particular relevance to the field of sanitary landfills, the Supreme Court recently found a preemptive intent as to the PUC vis-a-vis local governing bodies. See, Ringlieb v. Parsippany-Troy Hills, 59 N.J. 348 (1971). In response to this decision, the Legislature amended the relevant statute (N.J.S.A. 13:1E-1 et seq.) to clarify its intention that the doctrine of preemption was not to apply. L. 1971, c. 461. This history argues strongly against our finding a similar preemption here.
Actually, there is no conflict between the regulations of the Commission and those of the DEP or the PUC. The Commission's resolution which adopted the rules and regulations expressly provides that "all sanitary landfill operations shall comply * * * with the appropriate laws, rules and regulations of the Board of Public Utilities Commissioners and the Department of Environmental Protection." Further, any provisions or criteria for the location of land for solid waste disposal or codes and standards covering it which the Commission may adopt must be approved by the State Department of Health (N.J.S.A. 13:17-11), whose duties have now been transferred to the DEP. N.J.S.A. 13:1D-7(a). Rather than conflicting with the regulations of either the latter Department or the PUC, the regulations of the Commission mandate that they shall not conflict with either.
*125 With respect to the alleged concurrent regulatory power possessed by the PUC over landfill operations, the authority granted to that body is to regulate rates and economic aspects of that industry. N.J.S.A. 48:13A-4. The Commission has no authority to regulate its economic and competitive aspects, nor does it claim any. In other words, there is no overlap between the PUC and this Commission.
In any event, specific authority to regulate landfill operations has been granted to the Commission by the Legislature. The Commission is empowered to prepare and adopt a "master plan or portion thereof for the physical development of all lands lying within the district, which plan may include proposals for various stages in the future development of the district." N.J.S.A. 13:17-9(a). N.J.S.A. 13:17-11(a) provides that the master plan "shall include provisions or criteria for the location and use of buildings, structures, facilities, and land for solid waste disposal" and may also include (in N.J.S.A. 13:17-11(b)) "codes and standards covering land use, comprehensive zoning, subdivisions, building construction and design, housing, and the control of air and water pollution and solid waste disposal which has been approved by the State Department of Health, * * *." The Commission, in drafting the master plan, must "give due consideration to the necessity to provide in the district sanitary landfills and other facilities for the disposal of solid waste which may be utilized by municipalities within the district and municipalities throughout the State." N.J.S.A. 13:17-9(b). N.J.S.A. 13:17-10(d) provides that "no solid waste may be treated or disposed in the district by any person without the express written consent of the commission." Therefore, ample authority to regulate landfill operations is expressly granted to the Commission.

(2)

Plaintiff's contention that the Commission is a "competitor" of defendant and that therefore the Legislature did not intend to give the power of regulating to the Commission.
*126 Appellant's argument that the Commission is a competitor of plaintiff and therefore should not have the power of regulating plaintiff's operation is grounded in the fact that, under the statute, the Commission itself is empowered to operate landfill facilities (N.J.S.A. 13:17-10(c) and 13:17-6(w)), and that it is the intention of the Commission to eliminate private landfill operations and to provide modern facilities for the disposal and treatment of solid waste. The resolution adopting the last objective and intention does, indeed, so provide.
At the present time, there is no actual competition between plaintiff and the Commission. Putting that minor consideration aside, however, it is clearly the legislative intent and the overall objective of the Act creating the Commission that it shall 1) engage in landfill operations itself where it finds that it is necessary to do so in order to afford sufficient facilities for the disposal of garbage, and 2) in conformance with the objective of proper reclamation and redevelopment, eliminate all landfill operations. That is the public policy of this Act. If that necessitates elimination of plaintiff and its operation, so be it. As was said in Reilly v. Ozzard, 33 N.J. 529 (1960):
Within the constitutional framework, the Legislature is the architect of the structure of government. The Judiciary has no creative power in that area. [at 553].
A statute may be unwise, impolitic or unjust, but the courts have no power to overturn it absent a clear constitutional violation. Asbury Park Press, Inc. v. Woolley, 33 N.J. 1, 12 (1960).
Further, in N.J. Sports & Exposition Auth. v. McCrane, 119 N.J. Super. 457 (Law Div.), aff'd 61 N.J. 1 (1972), one of the objectors' contentions was that the proposed legislation would permit the Authority, in effect, to compete with privately owned race tracks and that the statute gave the *127 Authority certain advantages which private tracks did not possess. Judge Pashman, holding that a mere difference in treatment is not invidious so long as the classification is not arbitrary, dismissed the contention as untenable. (Law Div. slip opinion at 56-61). The Supreme Court affirmed, expressing substantial agreement with the principles applied below, and adding a discussion of other issues not herein relevant. This issue received no separate consideration, and so we may consider Judge Pashman's reasoning as having been adopted on appeal. (See Supreme Court slip opinion at 3).

(3)

Plaintiff's contention that the regulations are discriminatory.
The charge of discrimination in the regulations is based on the contention that some of them apply to a private landfill operator but do not apply to defendant Commission if it engages in that business. The argument is made: "The Commission may feel that sanitary landfills are an undesirable use of the land, and may prefer to eliminate solid wastes by incineration instead. Nevertheless sanitary landfills are lawful operations. The State (by the Public Utility Commission) issues certificates of public convenience and necessity covering such operations. How far can another state agency then go in `terminating sanitary landfill operations' in the Hackensack Meadowlands District?" The argument is fallacious. Because such operations are licensed by means of certificates of public convenience and necessity by the PUC, that does not stamp them with the eternal imprimatur of continuance. It is the legislative intent that landfills be ultimately eliminated. In expressing its intention to do so the Commission is carrying out the legislative will.

*128 (4)

Plaintiff's contention that the fees imposed in Section 15 of the regulations are unreasonable.
In challenging the fees which Section 15 of the regulations has imposed, appellant conceives that it is the Commission's burden to establish the validity and reasonableness thereof. On the contrary, there is a presumption of reasonableness and validity in the adoption of rules by such a Commission. Consolidation Coal Co. v. Kandle, et al., 105 N.J. Super. 104, 112-120 (App. Div. 1969), aff'd 54 N.J. 11 (1969). Appellant must carry the burden of showing that the action of an administrative agency is arbitrary. Bordens Farm Products Co., Inc. v. Baldwin, 293 U.S. 194, 202, 55 S.Ct. 187, 79 L.Ed. 281 (1934). Facts sufficient to justify the regulation must be presumed.
Plaintiff has offered no proof in support of its argument. Therefore, it has not sustained its burden of demonstrating that the fees are unreasonable.

(5)

Plaintiff's contention that the regulations are void for vagueness.
Here the argument is that the regulations provide that systems for the control of gases, leachate, odors, vectors or rodents must be provided, but that the regulations do not specify the particular gases involved or what leachate is, and do not establish how the subjects mentioned are to be controlled.
Appellant has not developed any proofs that the regulations are defectively vague in the respects contended. In the implementation of the regulations it may, in the future, appear that, in a particular instance of enforcement, there is vagueness and that such vagueness is prejudicial. That problem has not yet been reached. When a company undertakes an operation such as garbage dumping, presumably it *129 is aware of the potentials of nuisance inherent therein, and also is sufficiently knowledgeable of remedial measures to be undertaken to correct them, in the public interest. Therefore it is not unreasonable for the Commission to impose upon a landfill operator the burden of working out the details of compliance with the regulations.

(6)

Plaintiff's contention that the Commission did not support its regulations by evidence at the public hearing prior to their adoption.
The contentions of appellant under this point have been answered under point 4 above.
Accordingly, the Commission's order promulgating its regulations is hereby affirmed.
NOTES
[1] Emphasis herein is added unless otherwise noted.