135 N.J. Super. 158 (1975)
342 A.2d 886
ROBERT SABATO AND MARYANN SABATO, HIS WIFE, PLAINTIFFS,
v.
DOLORES SABATO, DEFENDANT.
Superior Court of New Jersey, Law Division.
June 13, 1975.
*162 Mr. Jack J. Soriano for plaintiffs (Messrs. Soriano & Henkel, attorneys).
Mr. James P. Lordi for defendant (Messrs. Lordi & Imperial, attorneys).
Ms. Charlotte Kitler, Deputy Attorney General, for amicus curiae (Mr. William F. Hyland, Attorney General of New Jersey, attorney).
SCALERA, J.S.C.
This action involves a constitutional attack on chapter 49 of the Laws of 1974, popularly known as the Fair Eviction Notice Act (hereinafter, "the act"), N.J.S.A. 2A:18-61.1 (cf. Fair Eviction Notice Act, N.J. *163 S.A. 2A:42-10.15), on the grounds that it impairs the obligation of contract in violation of the U.S. Const., Art. I, § 10 and N.J. Const. (1947), Art. IV, § VII, par. 3, and that it deprives them of their right to property without due process in contravention of U.S. Const., Amend. XIV, § 1, and N.J. Const. (1947), Art. I, par. 1.
On June 20, 1974 plaintiffs, residing elsewhere, became owners of a three-family house known as 52 Montgomery Street, Bloomfield, New Jersey. The act became effective on June 25, 1974.
Plaintiffs, as new owners, sought to occupy the first-floor apartment of the premises and accordingly served on defendant-occupant a notice to quit. At the time of oral argument plaintiffs tendered the representation that the property had been acquired specifically for the purpose of occupying the first-floor apartment so that it could be renovated for accessibility by their son, who was confined to a wheelchair with multiple sclerosis. When defendant refused to vacate the premises plaintiffs, on August 6, 1974, promptly instituted a summary dispossess action in the Essex County District Court. Because of plaintiffs' stated intention to raise issues of constitutional magnitude the matter was removed to this court (N.J.S.A. 2A:18-60) bottomed on plaintiffs' realization that they were faced with the act as a bar to their action for dispossession. The State has intervened as amicus curiae. R. 4:28-4(d). The parties agreed that the issue to be decided was one of law for the court to decide on the basis of certain undisputed facts.
Plaintiffs initially mounted a broad-based attack, contending that the entire thrust of the statute violates the federal and state constitutional guarantees against violation of due process and impairment of contract obligations. However, they now concede that, generally, the legislation constitutes a valid exercise of the police power in an area desperately in need of control.
Plaintiffs have thus retreated to a rather narrow issue  that the Legislature, in preventing owners of such property *164 from occupying any such dwelling units specifically for their own use, has exceeded constitutional limitations.
Prior to the passage of the Fair Eviction Notice Act (N.J.S.A. 2A:18-61.1) summary dispossess actions were controlled by N.J.S.A. 2A:18-53. Under the latter statute, rendered anachronistic by the passage of time, a landlord could evict a tenant for any reason or for no reason at all. In recognition of this fact the Legislature, when passing the legislation under consideration, appended a Statement to Assembly Bill 1586 (hereinafter A. 1586), L. 1974, c. 49, § 2, which was not included in the New Jersey Statutes Annotated:
At present, there are no limitations imposed by statute upon the reasons a landlord may utilize to evict a tenant. As a result, residential tenants frequently have been unfairly and arbitrarily ousted from housing quarters in which they have been comfortable and where they have not caused any problems. This is a serious matter, particularly now that there is a critical shortage of rental housing space in New Jersey. This act shall limit the eviction of tenants by landlords to reasonable grounds and provide that suitable notice shall be given to tenants when an action for eviction is instituted by the landlord.
Thus the statute ostensibly was to serve the purpose of protecting tenants by limiting the causes for which they may be evicted and be forced to find new quarters in a market critically short of rental housing. The general condition underlying its enactment was again recently recognized by the New Jersey Supreme Court in the case of Southern Burlington Cty. N.A.A.C.P. v. Mt. Laurel Tp., 67 N.J. 151, 158-159 (1975):
There is not the slightest doubt that New Jersey has been, and continues to be, faced with a desperate need for housing, especially of decent living accommodations economically suitable for low and moderate income families. The situation was characterized as a `crisis' and fully explored and documented by Governor Cahill in two special messages to the Legislature  A Blueprint for Housing in New Jersey (1970) and New Horizons in Housing (1972).
*165 In an attempt to help correct this situation N.J.S.A. 2A:18-61.1 was enacted, which provides in pertinent part:
No lessee or tenant * * * may be removed by the county district court or the Superior Court from any house, building, mobile home or land in a mobile home park or tenement leased for residential purposes, other than owner occupied premises with not more than two rental units * * *, except upon establishment of one of the following grounds as good cause: [Emphasis supplied]
There follows therein a compilation of ten bases for eviction which the Legislature defines and limits as "good cause": (a) failure to pay rent; (b) disorderly conduct; (c) destruction; (d) breach of the landlord's reasonable rules and regulations; (e) breach of covenant; (f) failure to pay rent after notice to quit and notice of increase in rent; (g) landlord seeks to demolish the building; (h) landlord seeks to remove the housing permanently from the rental market; (i) tenant refuses to accept reasonable changes in the lease, and (j) habitual failure to pay rent.
This legislation was enacted after public hearings on a series of bills, somewhat limited in the particular area here involved. N.J. Legislature Assembly, Commerce, Industry & Professional Committee, Public Hearings (1974). That the full impact of the entire statute is yet to be discerned is apparent. Various other provisions also appear destined to be tested by adversary proceedings in a court of law. 6 Rutg. Camden L. Rev. 565 (1975).
Obedient to the mandate that only ripe constitutional issues actually before the court are to be considered, we proceed to deal with the one narrow issue raised here. Garcia v. Morales, 47 N.J. 269 (1966), app. dism. 385 U.S. 449, 87 S.Ct. 613, 17 L.Ed.2d 511 (1967).
Well settled principles must guide this court in any review of legislation. There is a presumption in favor of the validity of an act. Inganamort v. Fort Lee, 120 N.J. Super. 286, 301 (Law Div. 1972), aff'd 62 N.J. 521 (1973). Even though a statute may be open to a construction which would *166 render it unconstitutional or permit its unconstitutional application, it is the duty of this court to so construe the statute as to render it constitutional if it is reasonably susceptible to such an interpretation. State v. Profaci, 56 N.J. 346, 350 (1970). A statute will be upheld if any reasonable state of facts may be conceived to justify it. Marlin v. McCorkle, 117 N.J. Super. 465, 470 (App. Div. 1971).
It is further the settled rule of judicial policy in this State that a legislative act will not be declared void unless its repugnancy to the Constitution is clear beyond a reasonable doubt. Gangemi v. Berry, 25 N.J. 1, 10 (1957); Inganamort, supra, 120 N.J. Super. at 301. Nor will courts anticipate situations wherein the application of a statute might be unconstitutional. State v. Hobbs, 90 N.J. Super. 146, 148 (App. Div. 1966). Constitutional questions will not be resolved unless absolutely imperative in the disposition of the litigation. Ahto v. Weaver, 39 N.J. 418, 428 (1963). The party attacking the constitutionality of a statute has the burden of proof. Yellow Cab Co. v. State, 126 N.J. Super. 81, 94 (App. Div. 1973), cert. den. 64 N.J. 498 (1974). A statute may be unwise, impolitic or unjust, but the courts have no power to overturn it absent a clear constitutional violation. Municipal Sanitary Landfill Auth. v. Hackensack, 120 N.J. Super. 118, 126 (App. Div. 1972). Asbury Park Press v. Woolley, 33 N.J. 1, 12 (1960). Our duty in this highly charged public policy area is to say what the law is and not what it ought to be. What it ought to be is a matter for the legislative branch of the government, and we must assume that branch will be conscientiously responsive to the requirement of public health and welfare, and the social and economic exigencies of the times. Bush v. Bush, 95 N.J. Super. 368, 378 (Law Div. 1967). The responsibility for policy decisions rests with the other branches of government, and this because of the doctrine of separation of powers. Brown v. Heymann, 62 N.J. 1, 11 (1972); A & B Auto Stores v. Newark, 59 N.J. 5, 19 (1971); Thomas v. Kingsley, 43 N.J. 524, 530 (1965). Moreover, it is not our function *167 to legislate; it is our duty to interpret. And in so doing we must give effect to the language employed by the legislative body in order to properly effect the legislative design, Dixon v. Gassert, 26 N.J. 1, 9 (1958); Maule v. Conduit & Foundation Corp., 124 N.J. Super. 488, 494 (Law Div. 1973), mindful also that a court should not assume the function of the Legislature and rewrite the law to include therein something which those charged with the legislative responsibility might have inserted if the matter had been called to their attention. Brick Tp. v. Spivak, 95 N.J. Super. 401, 406 (App. Div. 1967), aff'd 49 N.J. 400 (1967). However, it is equally clear that the court has the obligation to declare invalid legislative acts which exceed constitutional limitations or abridge basic rights under the guise of exercise of "police power".
It is the proper function, indeed the obligation, of the judiciary to give effect to the obvious purpose of the Legislature, and to that end words may be expanded or limited according to the manifest reason and obvious purpose of the law. New Capitol Bar & Grill Corp. v. Div. of Employment Secur., 25 N.J. 155, 160 (1957); DeFazio v. Haven S. & L. Ass'n, 22 N.J. 511, 518 (1956); Wollen v. Fort Lee, 27 N.J. 408, 418 (1958). However, it is to be noted that this case does not strictly involve interpretation of the act per se but rather its constitutionality as it affects the parties and the specific relief sought by plaintiffs.
Ordinarily, if a part of a statute is adjudged invalid and the remainder can stand independently without conflict with the over-all basic purpose of the Legislature, it will be allowed to do so. American Institute of Planners v. State Bd. of Professional Planners, 48 N.J. 581, 593 (1967), cert. den. 389 U.S. 8, 88 S.Ct. 70, 19 L.Ed.2d 8 (1957). Indeed, N.J.S.A. 1:1-10 specifically so provides.
In deference to statutory and case law, N.J.S.A. 2A:18-61.5 provides:
If any section, subsection, paragraph, sentence or other part of this act is adjudged unconstitutional or invalid, such judgment shall not *168 affect, impair or invalidate the remainder of this act, but shall be confined in its effect to the section, subsection, paragraph, sentence or other part of this act directly involved in the controversy in which said judgment shall have been rendered.
The statute, considered as a whole, is clearly a legislative act within the police power of the State. It is now settled beyond cavil that, "The State has the power, in the interests of the common good, to enact all manner of laws reasonably designed for the protection of the public health, welfare, safety and morals." Gundaker Central Motors v. Gassert, 23 N.J. 71, 78 (1956), app. dism. 354 U.S. 933, 77 S.Ct. 1397, 1 L.Ed.2d 1533 (1957); Jamouneau v. Harner, 16 N.J. 500, 514 (1954), cert. den. 394 U.S. 904, 75 S.Ct. 580, 99 L.Ed. 1241 (1955). The police power does not have its genesis in a written constitution. It is an indispensable attribute of our society, possessed by the state sovereignties before the adoption of the Federal Constitution. The essential content and meaning of the police power and the related constitutional guaranties remain the same, but the application of the power of necessity varies with changing needs and conditions pertaining to public health, safety, morals or general welfare. Schmidt v. Newark Bd. of Adjust., 9 N.J. 405, 414-415 (1952).
However, police power may not be exercised so as to be repugnant to the fundamental constitutional rights guaranteed to all citizens. Gundaker, supra, 23 N.J. at 79. The relief sought must come within the range of a reasonable requirement for the common good and welfare, and a measure that, in the purported service of that end, goes beyond the public need is not effective to curtail the personal and private property rights secured by constitutional guaranties. Reingold v. Harper, 6 N.J. 182, 192 (1951). In other words, restrictions adopted by the Legislature in the exercise of the police power must be reasonable and cannot go beyond the public need. Garden State Dairies v. Sills, 53 N.J. 71, 75 (1968).
The constitutional principles of due process and equal protection demand that the exercise of the power be devoid of unreason and *169 arbitrariness, and the means selected for the fulfillment of the policy bear a real and substantial relation to that end. Katobimar Realty Co. v. Webster, 20 N.J. 114, 123 (1955). (emphasis supplied).
As previously noted, the statutory measure here involved was enacted by the Legislature to help alleviate what it considered to be a critical residential housing shortage. (See statement appended to A. 1586, supra.) A legislative declaration of the existence of an emergency is entitled to judicial consideration, Bucsi v. Longworth B. & L. Ass'n, 119 N.J.L. 120, 122 (E. & A. 1937), app. dism. 305 U.S. 665, 59 S.Ct. 154, 83 L.Ed. 431 (1938), but it is always open to judicial inquiry whether the exigency exists upon which the operation of the law depends. Hourigan v. North Bergen Tp., 113 N.J.L. 143, 151-152 (E. & A. 1934). In Jamouneau v. Harner, 16 N.J. 500 (1954), which involved an "emergency" rent control statute which was to take effect on the lapse of the Federal Housing and Rent Act of 1947, the court stated,
The existence of an urgent public need due to a housing scarcity is in its very nature for the determination of the legislative authority; but the declaration of an emergency is not conclusive, and the finding as well as the continuance of the exigency upon which the operation of the law depends are subject to judicial inquiry. [at 515]
Under such police power, legislation may properly place limitations on freedom of contract and property rights.
Freedom of disposition of property, or liberty of contract, is not necessarily violated by restrictions imposed thereon under the police power, even though conditions that arise from the operation of the statute render ineffective related contracts which in themselves may be lawful. [National City Bank v. Del Sordo, 16 N.J. 530, 541-542 (1954); (emphasis supplied)]
The Fourteenth Amendment in the domain of state action does not operate as a limitation upon the quantum of such power, reasonably exercised. It merely conditions the exertion of the power by the demands of due process. In other words, all that is required is that the law shall not be unreasonable, arbitrary or capricious, and that the means selected *170 shall have a real and substantial relation to the object sought to be obtained. Schmidt, supra, 9 N.J. at 414.
In the light of the real and exigent circumstances in the field of housing accommodation available to the public, the statute in question generally is clearly a valid exercise of the police power insofar as it is directly related to public health, safety and welfare. The inquiry here is whether the Legislature acted unreasonably in enacting limitations specifically affecting the right of occupancy by the owner of the premises.
It appears that N.J.S.A. 2A:18-61.1 is modeled after both state and federal legislation. Unfortunately, the meager legislative history surrounding it (A. 1586) gives no clues in this regard. In addition to federal rent control acts containing similar provisions, similar acts exist at least in New York and Massachusetts. There is for our purpose, however, a critical dissimilarity in all of this legislation; each of those acts provide specifically that an owner may evict a tenant for his own use.[1]Cf. N.J. State Rent Control Act, *171 L. 1953, c. 216, § 14(2)(f) which expired December 31, 1954, and Rent Control Act, L. 1950, c. 234, § 8(b), which was repealed by above act.
In contrast, the only exclusion the New Jersey statute allows is found in the provision that the entire act is inapplicable to "* * * owner occupied premises with not more than two rental units * * *".
While it is true that other jurisdictions have provided for owner occupancy, this fact, in and of itself, is not determinative. There is no doubt that the right to acquire, own and dispose of real property is within the protective scope of the Fourteenth Amendment, or that such right is recognized by Art. I, par. 1 of our State Constitution. But the private right is not absolute. Jones v. Harridor Realty Corp., 37 N.J. 384, 391 (1962). The Fourteenth Amendment implies that when regulation by the states goes too far it results in a taking for which there must be compensation or there is a violation of due process. In the case of Pennsylvania Coal Co. v. Mahon, 260 U.S. 393, 43 S.Ct. 158, 67 L.Ed. 322, 325 (1922), the court stated,
As long recognized, some values are enjoyed under an implied limitation, and must yield to the police power. But obviously the implied limitation must have its limits or the contract and due process clauses are gone. One fact for consideration in determining such limits is the extent of the diminution. When it reaches a certain magnitude, in most if not all cases there must be an exercise of *172 eminent domain and compensation to sustain the act. So the question depends on the particular facts. The greatest weight is given to the judgment of the legislature, but it always is open to interested parties to contend that the legislature has gone beyond its constitutional power. [Emphasis supplied]
See also, United States v. Central Eureka Mining Co., 357 U.S. 155, 78 S.Ct. 1097, 2 L.Ed.2d 1228, 1236 (1958).
Certain constitutional provisions are patently clear and understandable. However, where those provisions are expressed in general terms, such as "due process," it has devolved upon the courts to interpret and delimit those terms as they apply to a given factual situation, "[b]earing in mind that the primary design of a constitution is to put the fundamentals of government beyond the control of `the varying moods of public opinion'" Gangemi, supra, 25 N.J. at 10.
In this case the question is whether the Legislature, in attempting to protect tenants from harsh and arbitrary actions of landlords, has thereby unduly invaded and deprived landlords of a basic right to use and dispose of their property as they see fit, and if so, whether that particular provision in the act may be expurgated without condemnation of the entire statute.
In effect, what the Legislature has done by enactment of N.J.S.A. 2A:18-61.1 is to prohibit plaintiffs from exercising a possessory interest in any part of their property unless and until the present tenant either chooses to vacate the apartment or commits an act which constitutes good cause for eviction under the statute. In this particular respect the act seems to have created a novel right in the tenant, whose possessory interest has traditionally been inferior to the fee simple interest of the landlord. To that extent we must determine whether the removal of that right from an owner and its transfer to the tenant by the Legislature amounts to such an overly zealous exercise of the police power as to amount to a deprivation of property without due process of law, in violation of the articles of the United States and New Jersey Constitutions. The Supreme Court *173 observed in United States v. Causby, 328 U.S. 256, 66 S.Ct. 1062, 1066, 90 L.Ed. 1206 (1945), n. 7 at 1211, that, "Governmental action short of acquisition of title or occupancy has been held, if its effects are so complete as to deprive the owner of all or most of his interest in the subject matter, to amount to a taking." (Emphasis supplied). In recognition of the same principle the Supreme Court of Pennsylvania held in Miller v. Beaver Falls, 368 Pa. 189, 82 A.2d 34 (1951) that:
Formerly it [a taking] was limited to the actual physical appropriation of the property or a divesting of title, but now the rule adopted in many jurisdictions and supporting the better reasoning is that when a person is deprived of any of certain rights in and appurtenant to tangible things; he is to that extent deprived of his property, and his property may be taken, in a constitutional sense, though his title and possession remain undisturbed; "and it may be laid down as a general proposition of property itself, that, whenever the lawful rights of an individual to the possession, use or enjoyment of his land are in any degree abridged or destroyed by reason of the exercise of the power of eminent domain, his property is, pro tanto, taken, and he is entitled to compensation." [at 38; emphasis supplied]
Thus it can be seen that it is not merely the absolute act of a taking by the state that constitutes a violation of the Fourtenth Amendment in this area. A regulation which deprives an owner of "all or most of his interest" is also condemned as an unreasonable exercise of the police power.
It may be argued that this act provides for "just compensation" because a landlord is still entitled to collect "reasonable" rentals from the property. "Just compensation," in our judgment, is not always satisfied in terms of monetary reward. Nor is due process always satisfied by such "compensation," as in the case of a right to occupy one's own premises in the absence of a taking in the traditional sense. Cf. Rivera v. Chinea, infra.
Rivera v. Chinea, 181 F.2d 974 (1 Cir.1950), involved an attack on a rent control statute. In that case plaintiff contended that § 12 of the Reasonable Rents Act of Puerto *174 Rico[2] was invalid insofar as it denied an owner of a commercial building the right to maintain an unlawful detainer action against a tenant in order to recover the premises for his own use. Plaintiff argued that the act violated due process, as do plaintiffs in this case.
In accepting the contentions advanced by plaintiff the court held:
It is true that the Legislature might impose reasonable regulations with respect to the recovery of possession by such landlords in order to prevent evictions which might tend to defeat the object of the act. But we think it was beyond its power in enacting the Reasonable Rents Acts absolutely to prohibit them from recovering possession of their properties from tenants the terms of whose lease contracts had expired when they desired possession solely for their own use and not for the purpose of rerenting to another tenant. Such legislative prohibition would appear to be so arbitrary in relation to the object sought to be attained by the act as to amount to a deprivation of the landlord's property without due process of law. (978). [at 978; Emphasis supplied]
While Rivera involved a commercial landlord who sought to use the premises for his own commercial purposes, the principle applies here with equal vigor. The prohibition here by the Legislature of plaintiff's right to use his property is, in our judgment, also an unreasonable exercise of the police power. By virtue of this statute, "[a] landlord is being required to dedicate substantial property interests to a public *175 use without compensation." Mayo v. Boston Rent Control Comm., Mass., 314 N.E.2d 118, 128 (Sup. Ct. Err. 1974) (dissent).
In contrast, in Block v. Hirsh, 256 U.S. 135, 41 S.Ct. 458, 65 L.Ed. 865 (1920), the Supreme Court upheld a District of Columbia statute that permitted a tenant to remain in possession after expiration of his term so long as the tenant continued to pay the rental due. The statute specifically provided for occupancy by an owner or members of his family upon giving 30 days' notice. The landlord deliberately sought occupancy without such notice, content to establish his right to occupancy without giving any notice pursuant to the statute. While upholding the general thrust of the statute, the court implied approval of the notice requirement as a reasonable condition precedent to ouster of the tenant to permit occupancy by an owner.
The companion case of Brown Holding Co. v. Feldman, 256 U.S. 170, 41 S.Ct. 465, 65 L.Ed. 877 (1920), dealt with a similar New York statute which also permitted occupancy, in good faith, by an owner ("being a natural person") and his family. A general constitutional attack on the statute by the owner was repelled by the court for the reasons expressed in Hirsh, supra. Neither case dealt with our situation here where the owner's right to occupy is all but totally destroyed by legislative mandate.
In seeking to accomplish the legitimate and salutory objective of preventing arbitrary and capricious removal of tenants our Legislature failed to give proper deference to the basic rights of property owners. There was no attempt to balance the means utilized to attain that objective against the constitutionally preserved property rights here under consideration. Rivera v. Chinea, supra.
Its net effect is to unduly restrict the heretofore unrestrained transfer and use of such property, resulting in illegal confiscation without just compensation. Ibid. The crisis worked by the housing shortage has not been demonstrated to the extent that such a curtailment is mandated, United *176 States v. Causby, supra. Moreover, the goal of preventing unfair ouster of tenants is not diminished to any appreciable degree by here preserving to a landlord the use of part of the property for personal occupancy.
To hold otherwise would result in owners of properties having relatively few rental units shouldering an intolerable burden in attempting to sell, faced with the restrictions presently imposed by the act. Prospective purchasers would obviously be discouraged, knowing that they themselves could not occupy any portion of the premises except where they are able to invoke a "good cause" situation or decide upon permanent retirement of the premises from the rental housing market. Bradley v. Rapp, 132 N.J. Super. 429 (App. Div. 1975).
Such properties would, in practicality, be confined to purchase for investment purposes only, as opposed to the rather common occurrence heretofore, of purchase both as a home and a source of supplemental income. Persons who would otherwise be inclined to purchase such property would thus be forced to reside elsewhere, as in this case. Building of such homes by contractors for sale would be discouraged rather than encouraged, contributing further to the housing shortage. Such building for "speculation" would tend to force sale while the property is still vacant to allow the purchaser the option to occupy part of the premises before renting space. Obviously this will restrict the purchase and sale of such properties and thus unduly inhibit transfer of property. In our judgment this is an unreasonable limitation on the sale and use of properties now regulated by the act. Katobimar Realty Co. v. Webster, 20 N.J. 114, 123 (1955).
Notwithstanding the Legislature's commendable actions in enacting this legislation, to the limited extent that it prohibits an owner from occupying any rental unit except for two-family dwellings the act breaches the constitutional safeguard of due process and must yield.
The police power may not legitimately be wielded to the extent that it subverts superior basic rights except upon a *177 clear showing that its application is reasonably necessary in given circumstances. Pennsylvania Coal, supra, 260 U.S. 393, 43 S.Ct. 158, 67 L.Ed. 322 (1922); Central Eureka Mining, supra, 357 U.S. 155, 78 S.Ct. 1097, 2 L.Ed.2d 1228 (1958); Rivera, supra, 181 F.2d 974 (1950). The State and defendant have failed to persuade this court that the legislative objectives heretofore discussed reasonably require inclusion of such a drastic provision that permanently precludes an owner from occupying, for his own use in good faith, one of the rental units. Indeed, the continuation of such right by owners would appear to have only limited effect on those goals while preserving the historic concept of property rights even in a modern day society.
Hence it is the judgment of this court that this act cannot be raised as a bar to a landlord's dispossession of a tenant where the landlord, in good faith, seeks to occupy that dwelling unit for himself. Cf. Bradley v. Rapp, supra.
By so holding it is not suggested here that the Legislature may not impose some restriction to limit this right or not impose reasonable conditions coincident with its assertion. (Indeed, several other states have already done so with judicial approbation. Mayo, supra, Mass. 314 N.E.2d 118 (1974); Rivera, supra, 181 F.2d 974 (1950); Rublick v. Weaver, 9 Misc.2d 619, 170 N.Y.S.2d 61 (Sup. Ct. 1957), aff'd 4 N.Y.2d 974, 177 N.Y.S.2d 498, 152 N.E.2d 523 (Ct. App. 1957); People ex rel. McGoldrick v. D'Alura, 197 Misc. 806, 99 N.Y.S.2d 278 (Sup. Ct. 1950); Zehil v. Weaver, 15 Misc. 2d 436, 182 N.Y.S.2d 111 (Sup. Ct. 1958).)
On balance (and concededly in retrospect), it would have been far wiser if the Legislature had squarely dealt with the problem by enactment of reasonable restrictions in this narrow area rather than imposition of a blanket restraint. Of course, we cannot now assume the function of the Legislature and rewrite the law to include therein something which the Legislature might have inserted if the matter had been called *178 to their attention. Brick Tp. v. Spivak, 95 N.J. Super. 401, 406 (App. Div. 1967), aff'd 49 N.J. 400 (1967).
It may well be that the Legislature will deem it appropriate or desirable to amend the act to require that a landlord's exercise of that right be invoked at certain times (e.g., within a reasonable time after purchase or upon expiration of the term of an existing lease), or that it be limited to a certain class of persons holding title (e.g., individuals or their immediate family, or individual partners, as opposed to corporate owners), or limited to certain types of property (e.g., buildings or structures ordinarily utilized for owner occupancy as opposed to large apartment houses or garden apartment complexes clearly representing "investment type" properties). Whether any particular limitation or set of restrictions thus imposed will pass constitutional muster must, of necessity, await the presentation thereof to a court of competent jurisdiction.
Today we go no further than to hold that this act, as presently written, cannot constitutionally bar an owner from ousting a tenant from a rental unit, upon lawful and reasonable notice, in order to use the premises in good faith for personal occupancy. N.J.S.A. 2A:18-53 et seq.
While there is no doubt that the Legislature had a laudable purpose in mind when it passed this statute, it nevertheless surpassed the bounds of even its vast power. As the Supreme Court stated in Pennsylvania Coal, supra, 260 U.S. at 416, 43 S.Ct. at 160, 67 L.Ed. at 326: "We are in danger of forgetting that a strong public desire to improve the public condition is not enough to warrant achieving the desire by a shorter cut than the constitutional way of paying for the change."
Accordingly, for the reasons hereinabove set forth, absent an application by defendant to this court within ten days for an extension of time pursuant to N.J.S.A. 2A:42-10.6, a judgment of possession in favor of plaintiffs will be entered and a warrant for removal will issue upon expiration of the three-day period specified by N.J.S.A. 2A:18-57.
NOTES
[1] Massachusetts St. 1970, c. 842, § 9(a), provides: "No person shall bring any action to recover possession of a controlled rental unit unless: (8) the landlord seeks to recover possession in good faith for use and occupancy of himself, or his children, parents, brother, sister, father-in-law, mother-in-law, son-in-law, or daughter-in-law."

N.Y. Unconsol. Laws, § 8585(2) (McKinney 1946), provides: "No tenant shall be removed or evicted * * * unless on application of the landlord the commission shall issue an order granting a certificate of eviction * * *. The commission shall issue such an order whenever it finds that: (a) the landlord seeks in good faith to recover possession of housing accommodations because of immediate and compelling necessity for his own personal use and occupancy or for the use and occupancy of his immediate family; provided, however, that where the housing accommodations are located in a building containing twelve or less housing accommodations and the landlord does not reside in the building and the landlord seeks in good faith to recover possession for his own personal use and occupancy, an immediate and compelling necessity need not be established."
N.Y. Rent & Eviction Regulations, Unconsol. Laws, § 55(1) (McKinney 1957), provides: "A certificate [of eviction] shall be issued where the landlord seeks in good faith to recover possession of housing accommodations because of immediate and compelling necessity for his own personal use and occupancy or for the use and occupancy of his immediate family. * * * Provided, however, that where the housing accommodations are located in a building containing twelve or less housing accommodations and the landlord does not reside in the building * * * and the landlord seeks to recover possession for his own personal use, an immediate and compelling necessity need not be established."
The Federal Housing and Rent Act of 1947, c. 163, Public Law 129, § 209(a), provided: "No action or proceeding to recover possession of any controlled housing accommodations * * * shall be maintainable by any landlord against any tenant in any court * * * unless: (2) the landlord seeks in good faith to recover possession of such housing accommodations for his immediate and personal use and occupancy as housing accommodations."
[2] As summarized (at 976), § 12 provides that, "* * * during the existence of the emergency and as long as the tenant pays the basic rent or the reasonable rent fixed by the Administrator, as the case may be, the landlord may not prosecute an action for unlawful detainer against the tenant to recover possession of the rented premises even though the term of the lease contract has expired except: * * * (a) when the tenant fails to pay rent; (b) when the tenant uses the premises for illegal or immoral purposes without the landlord's knowledge; (c) when the tenant sublets without the authority of the landlord; (d) when the landlord desires in good faith to recover the premises in order to demolish them with the intention of constructing a new building; (e) when the tenant causes malicious or considerable negligent damage to the leased property, and (f) in the case of a dwelling not habitually used for rent, when the landlord seeks in good faith to recover possession of it for his immediate personal use as a place of residence."