220 N.J. Super. 373 (1987)
532 A.2d 272
RUBEN CABRERA, PLAINTIFF,
v.
DOMINICIO MORDAN, DEFENDANT.
Superior Court of New Jersey, Law Division Special Civil Part Passaic County.
Decided March 31, 1987.
*374 Neil Chessin for plaintiff.
Peggy Earisman for defendant.
SCANCARELLA, J.S.C.
This action involves the applicability, or nonapplicability, of § l(3) of N.J.S.A. 2A:18-61.1, Eviction for Good Cause Act, (hereinafter the act) in the case of a building which contains three residential units and one commercial unit.
Under said section of the act, an owner of a building containing three residential units or less may evict a tenant in order to personally occupy the premises. The Legislature thereby recognized that "three residential units or less ... to personally occupy" constitutes good cause for eviction.
Plaintiff, Ruben Cabrera, in the case sub judice is the owner of the building in which he seeks to occupy the first-floor apartment. He served upon defendant-tenant, Dominicio Mordan, a notice to quit on November 28, 1986 terminating said tenancy as of February 1, 1987. When tenant failed to vacate *375 said premises, plaintiff initiated this summary dispossess action.
Prior to the passage of the act in 1974, summary dispossess actions were controlled by N.J.S.A. 2A:18-53, whereunder landlords could evict tenants without having to establish good cause. No doubt, that as a result of the arbitrary removal of tenants under N.J.S.A. 2A:18-53, and the critical housing shortage in the State of New Jersey, the act was adopted.
In enacting that legislation, the Legislature made the following statement:
At present, there are no limitations imposed by statute upon the reasons a landlord may utilize to evict a tenant. As a result, residential tenants frequently have been unfairly and arbitrarily ousted from housing quarters in which they have been comfortable and where they have not caused any problems. This is a serious matter, particularly now that there is a critical shortage of rental housing space in New Jersey. This act shall limit the eviction of tenants by landlords to reasonable grounds to provide that suitable notice shall be given to tenants when an action for eviction is instituted by the landlord.
Subsequent cases have iterated and amplified the above statement on numerous occasions. See, e.g., Bradley v. Rapp, 132 N.J. Super. 429 (App.Div. 1975); Stamboulos v. McKee, 134 N.J. Super. 567 (App.Div. 1975); Puttrich v. Smith, 170 N.J. Super. 572 (App.Div. 1979). The court in Gross v. Barriosi, 168 N.J. Super. 149 (Cty.D.Ct. 1979) (citing 25 Fairmount Ave., Inc. v. Stockton, 130 N.J. Super. 276, 288 (Cty.Ct. 1974)) clearly stated the purpose of the act as:
The overall spirit of the law is the prevention of arbitrary removal of tenants from housing quarters in which they have been comfortable and where they have not caused any problems. [at 151]
The act was passed in 1974 as remedial legislation to alleviate hardship experienced by residential tenants as a result of arbitrary or unfair eviction by landlords. In relevant part, the introductory language of N.J.S.A. 2A:18-61.1 provides as follows:
No lessee or tenant ... may be removed by the County District Court or the Superior Court from any house, building ... leased for residential purposes, other than owner-occupied premises with not more than two rental units *376 ..., except upon establishment of one of the following grounds as good cause. [Emphasis supplied]
thereby establishing "other than owner occupied premises with not more than two rental units" as an exception. Following therein were ten enumerated causes for eviction from nonexempt premises: (a) nonpayment of rent; (b) disorderly conduct; (c) destruction of property; (d) violation of landlord's rules and regulations; (e) violation of covenant in lease; (f) failure to pay rent after increase which is not unconscionable; (g) owner seeks to demolish building; (h) tenant refuses to accept reasonable changes in lease; (i) habitual late payment of rent;
The Legislature added subsection 1(3) in 1975 as a cause for eviction. In its entirety, this subsection provides as good cause for eviction the following:
The owner of a building of three residential units or less seeks to personally occupy a unit, or has contracted to sell the residential unit to a buyer who wishes to personally occupy it and the contract for sale calls for the unit to be vacant at the time of closing.
N.J.S.A. 2A:18-61 l(3) was not enacted as part of the original 1974 legislation, but was adopted November 24, 1975 subsequent to a decision in Bradley v. Rapp, supra, in which a purchaser of a two-family premises, and a decision in Sabato v. Sabato, 135 N.J. Super. 158 (Law Div. 1975) in which a purchaser of a three-family premises, sought to personally occupy one of the residential units.
In Bradley, the court concluded that one who purchases a two-family premises with the express purpose of immediately residing therein renders the premises "owner occupied". Therefore, a new owner seeking to occupy a two-family premises would be entitled to dispossess one of the tenants without having to show good cause just as if he were an owner already in occupancy seeking to evict a co-occupant. Thus, the exemption of a two-family owner occupied premises was extended to apply to two-family premises about to become owner occupied. In Sabato, the court, in effect, tried to extend the concept of Bradley from two-family premises to three-family premises so *377 as to allow removal of one of the tenants without cause. According to the trial court, any contrary holding would have resulted in a breach of the constitutional safeguard of due process by totally abrogating property rights of owners. Indeed Sabato was later overruled by Puttrich v. Smith, supra, wherein the appellate court stated:
The concern of the judge, who decided Sabato, that the landlord not be deprived of most of his interest in the subject matter ... is alleviated by the very terms of the statute which excepted from its operation owner-occupied premises of not more than two rental units (and since Sabato, buildings of three residential units or less in certain circumstances). We are satisfied that statutory control of units larger than two rental units cannot deprive an owner of `most of his interest' in them [170 N.J. Super. at 576]
While it is true that the trial Court in Sabato permitted an eviction by declaring the preamended act unconstitutional, and even though the appellate court in Puttrich later overruled that holding, it is nonetheless instructive to review the concerns of the court in Sabato. It is apparent that the Legislature addressed those concerns when it enacted an amendment to the act prior to the Puttrich overruling.
The trial court opined that prospective purchasers of multidwelling residential homes would be discouraged since these purchasers could not occupy any portion of the premises without showing good cause to evict. The result would be that only purchasers for investment would buy a building with more than two rental units. The individual who buys a building both to occupy personally and to supplement his income from the rental would no longer do so. Building of such homes by contractors would be discouraged, further contributing to the shortage of rental housing space.
The trial court went on to state that this problem could be corrected if the act were amended to allow landlords to assert their property rights at certain times or to certain types of property. By way of example, the court stated that such a type of property could be those buildings and structures which are ordinarily used for owner occupancy as opposed to large apartment houses and garden apartment complexes clearly representing *378 "investment type" property. The Legislature reviewed the situation presented in Sabato and addressed the concerns of the court expressed therein. Whereupon the Legislature extended the owner's rights to possession in the specific circumstance of a building with three residential units or less.
The legislative history, then is as follows:
(a) Prior to June 25, 1974 N.J.S.A. 2A:18-53 governed and generally permitted removal without cause;
(b) After June 25, 1974 N.J.S.A. 2A:18-61.1 generally precluded removal without cause in nonexempt premises; (two-family premises already owner occupied being exempt);
(c) After February 24, 1975, Bradley v. Rapp, supra, permitted removal by a new owner-to-be of two-family premises and after June 13, 1975 Sabato v. Sabato, supra, permitted removal by a new owner-to-be of three-family premises;
(d) After November 24, 1975, N.J.S.A. 2A:18-61.1 l(3) permitted removal by a new owner of three-family premises by legislation, albeit the Sabato reasoning was later rejected in Puttrich v. Smith, supra.

The Legislature's response to Sabato was its enactment of the amendment 1(3) allowing a new owner of a building of three residential units or less to evict a tenant in order to personally occupy that unit.
The words of that amendment are clear, and in this court's view, accurately express the intention of the Legislature to allow the ouster of a residential tenant when the building in question contains three residential units or something less  not something else or something more.
Clearly, where there are three residential units or less, a new owner who wishes to occupy one of the units, can remove a tenant, because the very situation contemplated by the Legislature exists. Therefore, ipso facto, there is good cause. Clearly, where there are more than three residential units, a new owner may not remove one of the tenants because the statutory requirement of good cause is not met.
However, it is not so clear, where as here, plaintiff landlord attempts to remove defendant tenant under 1(3), purporting to be the owner of a building with three residential units or less, *379 when, in fact there are three residential units and one commercial unit. Neither the Legislature nor the courts have spoken precisely to the issue of whether or not an owner of a building with three residential units plus something else, i.e., a commercial unit, has just cause to remove a tenant without other grounds.
This court thinks not. This is based on the equitable maxim of legislative intention and interpretation-expressio unius est exclusio alterius  the expression of one thing is the exclusion of others. The Legislature said "three residential units or less." Here we have three residential units and more, i.e., three residential units and one commercial unit  a mixed use.
Inasmuch as the Legislature did not express its intention that buildings containing commercial rental units in addition to residential units are includable within the amendment, they are necessarily excluded. Three plus one equals more than three; therefore, the tenant should not be evicted.
Furthermore, to construe the act to allow eviction of a residential tenant when a building contains three residential units and one commercial unit would produce an anamolous result inasmuch as eviction would not be allowed in the same building if the commercial unit were a fourth residential unit.
As the court stated in Bradley v. Rapp, supra:
In our view of the statute we are compelled to give primary regard to the fundamental purpose for which it was enacted. At the same time we should strive to avoid an anamolous, unreasonable, inconceivable or absurd result. New Jersey Builders v. Blair, 60 N.J. 330, 338 (1972); Union County Board of Freeholders v. Union County Park Commission, 41 N.J. 333, 341 (1964); Robson v. Rodriguez, 26 N.J. 517, 528 (1958); Sandler v. Springfield Township Board of Adjustment, 113 N.J. Super. 333, 345 (App.Div. 1971). [132 N.J. Super. at 433]

As the Court stated in Jersey City Chapter Property Owners v. City Council, 55 N.J. 86 (1969):
When all is said and done the matter of statutory construction here will not justly turn on literalisms, technisms or the so called formal rule of interpretation; *380 it will justly turn on the breadth of the objectives of the Legislature and the common sense of the situation. [at 100]
Considering the underlying purpose of the statute to eliminate capricious evictions of residential tenants, the legislative history and caselaw which culminated in enactment of the subsection in question and the "common sense" of the situation, this court cannot conceive that the Legislature could have intended to allow the ouster of a residential tenant under these circumstances. Moreover, this court may not even be able to conceive that § 1(3) of the act was intended to allow eviction of tenants in any type of mixed use building no matter how few units are contained therein, although such a finding need not be made to disallow eviction in this case.
The instant matter concerns a building with four rental units. Regardless of whether one unit is a commercial rental, the building contains four rental units; therefore, it does not fall into the purview of subsection 1(3). As for the case of a building with two residential units and one commercial unit, alluded to above, a determination of that issue will have to await an appropriate case. For example, a building with two residential units plus one commercial unit may not equate to a building with three residential units anymore than a building with three residential units plus one commercial unit does. However, that question is not yet before this court.
Suffice to state at this juncture that under the limited facts that are before this court, and considering the Legislature's intention that an owner's right to utilize his property must yield to the tenant's interest in keeping his home, no judgment for possession may issue. Had the Legislature intended otherwise, it could have or should have expressed that intention. Until then, tenants in buildings with four or more rental units, three being residential tenancies, should not be evicted without grounds. This tenant should, therefore, not be evicted under this set of facts. Accordingly, there can be no judgment for possession entered in this matter; the cause is dismissed.