586 A.2d 331
AQUINO COLONIAL FUNERAL HOME, A NEW JERSEY CORPO-
RATION, PLAINTIFF–RESPONDENT, v. ANTHONY PITTARI
& VERONICA PITTARI, DEFENDANTS–APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued January 7, 1991—Decided February 7, 1991.

Before Judges MUIR, Jr. and BROCHIN.

*Olga K. Arthars* argued the cause for appellants (Passaic County Legal Aid Society, attorney; *Olga K. Arthars,* on the brief).

*Salvatore L. Borrelli* argued the cause for respondent.

The opinion of the court was delivered by

BROCHIN, J.A.D.

The Anti–Eviction Act, *N.J.S.A.* 2A:18–61.1, limits a landlord's right to evict a residential tenant from

any house, building, mobile home or land in a mobile home park or tenement leased for residential purposes, other than owner-occupied premises with not more than two rental units or a hotel, motel or other guest house or part thereof rented to a transient guest or seasonal tenant....

The landlord can evict the tenant only for those reasons which the statute defines as "good cause."

In the present case, the trial court held that the landlord had established "good cause" within the meaning of *N.J.S.A.*

2A:18–61.1(*l*)(3). Under that provision, good cause exists when:

> The owner of a building of three residential units or less seeks to personally occupy a unit, or has contracted to sell the residential unit to a buyer who wishes to personally occupy it and the contract for sale calls for the unit to be vacant at the time of closing....

The tenant appealed, contending that a corporate owner intending to operate its business in its building is not "seek[ing] to personally occupy a unit" within the meaning of the statute. We agree and therefore reverse.

Plaintiff Aquino Colonial Funeral Home, a corporation, operates its funeral home business in a portion of a building that it owns. It rents the remainder of the building to two tenants for residential apartments. In order to expand its business premises into the space now occupied by one of its residential tenants, defendant Veronica Pittari [1], plaintiff commenced this suit for eviction pursuant to *N.J.S.A.* 2A:18–61.1(*l*)(3).

Mr. Vincent Lombardo testified on behalf of plaintiff. He stated that he and his wife are Aquino Funeral Home's sole stockholders and that he is its only employee. The funeral home may be in operation at any hour of the day or night, and Mr. Lombardo works 60 or 70 hours a week. He wants to move his office to the second floor, where Ms. Pittari's apartment is now located, so that his files, which are scattered throughout his premises, can be consolidated there, and so that he can meet in greater privacy with persons who come to arrange for funerals.

There is no reported appellate decision which has determined whether business or professional use of premises constitutes "personally occupy[ing]" them within the meaning of *N.J.S.A.* 2A:18–61.1(*l*)(3). The only reported trial court decision on point is *Gross v. Barriosi,* 168 *N.J.Super.* 149, 401 *A.*2d 1127 (Cty.Ct.

---

[1] The caption of this case refers to Anthony Pittari and Veronica Pittari, but the record mentions only Veronica. We will therefore refer only to one defendant, Veronica Pittari.

1979). There a podiatrist wanted to put his professional office in part of a building that he owned. The court held that utilizing the building for that purpose would not be "personally occupy[ing]" it. *Id.* at 151, 401 *A.2d* 1127. *Cf. Pappas v. Huezo,* 237 *N.J.Super.* 492, 494, 568 *A.2d* 145 (Law Div.1989) (holding that premises used for a dentist's office are not "owner-occupied" within the meaning of the introductory paragraph of *N.J.S.A.* 2A:18–61.1). *But cf. Lewis v. Traynham,* 234 *N.J.Super.* 121, 126–127, 560 *A.2d* 120 (Law Div.1989) (holding that premises used for a beauty parlor are "owner-occupied" within the meaning of the introductory paragraph of *N.J.S.A.* 2A:18–61.1).

We therefore turn to the statute itself. *N.J.S.A.* 2A:18–61.-1(*l*)(3) focuses on residential use. The section deals only with "a building of three *residential* units or less" and with an owner who either "seeks to personally occupy a unit," i.e., one of those three *residential* units, or who has "contracted to sell the *residential unit* to a buyer who wishes to personally occupy it...." (Emphasis added.) In view of the language of (*l*)(3), an owner's prospective utilization of a portion of his building for a non-residential purpose could not even arguably constitute "good cause" under that section except in the infrequent case where, as in the present instance, a landlord seeks to convert a residential unit to his own non-residential use. However, to permit a landlord to displace a residential tenant in order to make room for a non-residential use, even the landlord's own non-residential use, would be inconsistent with the legislative intent of the Anti–Eviction Act. The Anti–Eviction Act is

intended "to protect residential tenants from the effects of what the Legislature has deemed to be a severe shortage of rental housing in this state." *Harden v. Pritzert,* 178 *N.J.Super.* 237, 240 [428 *A.2d* 927] (App.Div.1981). The statute is framed to afford "residential tenants the right, absent good cause for eviction, to continue to live in their homes without fear of eviction or lease non-renewal and thereby to protect them from involuntary displacement." *Morristown Mem. Hosp. v. Wokem Mtge. & Realty,* 192 *N.J.Super.* 182, 186 [469 *A.2d* 515] (App.Div.1983).

*Durruthy v. Brunert,* 228 *N.J.Super.* 199, 202, 549 *A.*2d 456 (App.Div.1988), *certif. denied* 114 *N.J.* 482, 555 *A.*2d 607 (1989); *see also* Statement to *Assembly Bill* 1586, *L.*1974, *c.* 49, § 2, *quoted in Sabato v. Sabato,* 135 *N.J.Super.* 158, 164, 342 *A.*2d 886 (Law Div.1975), *overruled, Puttrich v. Smith,* 170 *N.J.Super.* 572, 407 *A.*2d 842 (App.Div.1979) (The legislative purpose for enactment of the Anti–Eviction Act was to prevent "residential tenants ... [from being] unfairly and arbitrarily ousted from housing quarters in which they have been comfortable and where they have not caused any problems ... [at a time when] there is a critical shortage of rental housing space in New Jersey.").

*N.J.S.A.* 2A:18–61.1(*l*) was enacted in response to *Sabato v. Sabato, supra,* 135 *N.J.Super.* 158, 342 *A.*2d 886. In *Sabato,* a new owner had acquired a three-family house five days before the effective date of the Anti–Eviction Act. The Act purported to prohibit him from evicting a tenant, even in order to live in the house himself. He challenged the constitutionality of the statute. *Id.* at 163–164, 342 *A.*2d 886. The court held that "to the limited extent that [the statute] prohibits an owner from occupying any rental unit except for two-family dwellings the act breaches the constitutional safeguard of due process and must yield." *Id.* at 176, 342 *A.*2d 886. The court called on the legislature to amend the Anti–Eviction Act in order to cure what the court viewed as a flaw that rendered the statute unconstitutional. *See* Note, *New Jersey's Anti–Eviction Act Prohibits Removal of Residential Tenants by Foreclosing Mortgagee Upon Default of Landlord–Mortgagor, Absent "Good Causes,"* 11 *Seton Hall L.R.* 311, 315–318 and especially nn. 31 and 37 (1980). Shortly thereafter, the Legislature enacted *N.J.S.A.* 2A:18–61.1(*l*)(3) of the Anti–Eviction Act in order "to assure that the owner of a building with a small number of residential units can reside in his own building and have some control over the persons with whom he lives." *Durruthy v. Brunert, supra,* 228 *N.J.Super.* at 202, 549 *A.*2d 456. In view of this origin and purpose of *N.J.S.A.* 2A:18–61.1(*l*)(3), it would

be an unwarranted distortion of the meaning of the statute to interpret "personally occupy" as embracing a corporation's business use of a tenant's residential apartment.

Furthermore, the "owner-occupied" exemption from the scope of the Anti–Eviction Act, found in the introductory paragraph to *N.J.S.A.* 2A:18–61.1, and the "good cause" for eviction defined in *N.J.S.A.* 2A:18–61.1(*l*)(3) are "complementary." *See Dempsey v. Mastropasqua,* 242 *N.J.Super.* 234, 239, 576 *A.*2d 335 (App.Div.1990); *Durruthy v. Brunert, supra,* 228 *N.J.Super.* at 202, 549 *A.*2d 456. The exemption permits a landlord who already occupies his own building with no more than two rental units to evict a tenant without demonstrating "good cause," and *N.J.S.A.* 2A:18–61.1(*l*)(3) permits a landlord who does not yet occupy the building to displace a tenant in order to make an apartment available for his own use. The meaning of "owner-occupied" in the introductory paragraph of *N.J.S.A.* 2A:18–61.1 therefore sheds light on the meaning of "personally occupy" in *N.J.S.A.* 2A:18–61.1(*l*)(3).

As previously noted, the introductory paragraph of *N.J.S.A.* 2A:18–61.1 prohibits the removal of a tenant from "any house, building, mobile home or land in a mobile home park or tenement leased for residential purposes, other than...." With the exception of "building," each of the enumerated terms connotes use as a dwelling place. In context, "building," too, implies a structure used at least in part for residential purposes since a non-residential tenancy is not protected by the Anti–Eviction Act. Similarly, in that same paragraph's exemption for "owner-occupied premises with not more than two rental units or a hotel, motel or other guest house or part thereof rented to a transient guest or seasonal tenant," all of the enumerated structures except "owner-occupied premises with not more than two rental units" denote dwelling places. It is a general rule of statutory construction that "when general words follow specifically named things of a particular class, the general words must be understood as limited to things of the same general class, or at least of the same general character." *Transconti-*

*nental Gas Pipeline Corp. v. Dept. of Conservation,* 43 *N.J.* 135, 146, 202 *A.*2d 849 (1964). This rule supports the view that when the legislature used the term "owner-occupied premises," it was referring to real estate that the owner was using for residential purposes. Since the scope of *N.J.S.A.* 2A:18–61.- 1(*l* )(3) is "complementary" to that of *N.J.S.A.* 2A:18–61.1, this interpretation of "owner-occupied" tends to confirm that "personally occupy" in *N.J.S.A.* 2A:18–61.1(*l* )(3) also refers to occupancy of a residential unit as a dwelling.

The judgment appealed from is therefore reversed.