DEE LEWIS, PLAINTIFF, v. JOYCE TRAYNHAM, DEFENDANT.

Superior Court of New Jersey
Law Division (Special Civil Part)
Essex County

Decided May 4, 1989.

*Jonathan H. Rosenbluth,* for plaintiff.

*Norman Peterkin,* for defendant.

HONIGFELD, J.S.C.

This summary dispossession action raises the question of whether occupation by a landowner of a portion of premises for solely commercial purposes render the premises "owner-occupied," and thus, not subject to the Good Cause for Eviction Act, *N.J.S.A.* 2A:18–61.1 (also known as the Anti–Eviction Act). The precise question has not been resolved in any reported New Jersey case found by this court.

Plaintiff, Dee Lewis, owns property at 288 Amherst Street, East Orange containing two residential units, one of which is leased to defendant Joyce Traynham. The remainder of the building contains a beauty salon owned by plaintiff. The business is owned solely by her, and employs one part-time employee. The beauty parlor is open Tuesday through Saturday, from 9:00 a.m. until 8:00 or 9:00 p.m. Plaintiff is always present when the business is open.

On February 1, 1989, plaintiff served on defendant a notice to quit the premises and terminate the tenancy, stating that she needed the premises for a member of her family.

*N.J.S.A.* 2A:18–61.1(*l* )(3) provides the following good cause for eviction:

> The owner of a building of three residential units or less seeks to personally occupy a unit, or has contracted to sell the residential unit to a buyer who wishes to personally occupy it and the contract for sale calls for the unit to be vacant at the time of closing.

Obviously, the notice to quit did not state a ground under this statutory section, since it refers to occupation by a relative of the owner, but not the owner herself. The notice would have been adequate under *N.J.S.A.* 2A:18–53(a), which permits removal of a tenant without cause, and would apply if the tenancy is not one protected by *N.J.S.A.* 2A:18–61.1, which, in pertinent part, states:

> No lessee or tenant or the assigns, undertenants or legal representatives of such lessee or tenant may be removed by the county district court or the Superior Court from any house, building ... or tenement leased for residential purposes, other than owner-occupied premises with not more than two rental units ... except for one of the following grounds as good cause....

If the building qualifies as "owner-occupied" by reason of plaintiff's business operation, then the notice to quit was sufficient and she may terminate defendant's tenancy.

The phrase "owner-occupied" in *N.J.S.A.* 2A:18–61.1 was interpreted in *Bradley v. Rapp*, 132 *N.J.Super.* 429 (App.Div. 1975). The notice to quit in that case failed to specify the reason for termination of the tenancy. The notice was sent after *N.J.S.A.* 2A:18–61.1 became effective, but prior to the effective date of subsection (*l* )(3) of the statute, *i.e.*, February 19, 1976. The reason why the landlord desired eviction of the tenant was to reside there with his own family. The Appellate Division noted that specificity of the cause for termination is required, under *N.J.S.A.* 2A:18–61.2, in a notice to terminate a tenancy under *N.J.S.A.* 2A:18–61.1, but not in a notice terminating a holdover tenant under *N.J.S.A.* 2A:18–53.

The premises were deemed "owner-occupied," and thus, not subject to *N.J.S.A.* 2A:18–61.1. The court first recognized that the Good Cause for Eviction Act was intended to protect residential tenants from arbitrary and unfair ouster, especially in view of a critical housing shortage, and primary regard must be given to this fundamental purpose. It then cautioned: "At the same time we should strive to avoid an anomalous, unreasonable, inconceivable or absurd result." 132 *N.J.Super.* at 433.

In deciding that the premises were "owner-occupied," the Appellate Division pointed out the incongruity in allowing an owner already residing in a two-family house to oust a tenant without cause and occupy the whole building, while an owner who wished to move into one unit would be unable to do so without good cause. It reasoned that ouster in this case was not the sort of arbitrary, unfair eviction the legislation was designed to avoid.

The rationale behind the "owner-occupied" exclusion was discussed in *Fresco v. Policastro,* 186 *N.J.Super.* 204 (Cty.D.Ct. 1982), namely, the Legislature's recognition of the "unfairness of forcing resident landlords to live with tenant whom they found to be unfavorable...." *Id.* at 206. The case construed "premises" broadly, permitting eviction under *N.J.S.A.* 2A:18–53 when landlord and tenant resided in separate structures on the same property.

The reasoning of *Fresco* was cited approvingly in *Couey v. Sterling,* 224 *N.J.Super.* 581 (Law Div.1988), which deemed the fact that a building had mixed residential and commercial uses qualified for eviction under *N.J.S.A.* 2A:18–53 where the owner lived in the building and it contained no more than two other rental units.

In a case similar to *Couey* in its facts, *Durruthy v. Brunert,* 228 *N.J.Super.* 199 (App.Div.1988), the Appellate Division decided that the presence of commercial units in a building with three or less residential units did not deprive the owner of

recourse to *N.J.S.A.* 2A:18–61.1(*l*)(3). Judge Gaulkin first noted that the purpose of the Anti–Eviction Act, *N.J.S.A.* 2A:18–61.1, was protection of residential tenants from the effects of a severe housing shortage. He then noted:

> In defining the rights of residential tenants, however, the Legislature also assured that owners would have certain rights to enjoy their properties. The Act provides not only that "good cause" can exist where an owner seeks to personally occupy a residential unit but also that "good cause" requirements are not applicable with respect to "owner-occupied premises with more than two rental units." *N.J.S.A.* 2A:18–61.1 The purpose of those complementary provisions is evident: to assure that the owner of a building with a small number of residential units can reside in his own building and have some control over the persons with whom he lives. [228 *N.J.Super.* at 202; footnotes omitted]

In a footnote, *Durruthy* noted that, while on appeal plaintiff argued that removal could be had under *N.J.S.A.* 2A:18–53, the argument was not addressed because it was not raised at the trial level. *Couey v. Sterling, supra,* was then cited.

While *Durruthy* speaks of the owner of a small number of residential units residing in the building, it did not decide that occupation must be residential in order to constitute owner occupation. It deals with "personally occupy" under *N.J.S.A.* 2A:18–61.1(*l*)(3), and not the "owner-occupied" exclusion in the Anti–Eviction Act.

The question of whether occupation by an owner must be residential was raised in *Gross v. Barriosi,* 168 *N.J.Super.* 149 (Cty.D.Ct.1979), involving the "personally occupy"-by-the-owner cause for eviction under *N.J.S.A.* 2A:18–61.1(*l*)(3), and not the general "owner-occupied" exclusion from *N.J.S.A.* 2A:18–61.1. The owner of a building with three residential units, a podiatrist, sought to evict the tenant of the first-floor apartment in order to establish a branch office for his practice. The court took cognizance of the purposes for the Good Cause for Eviction Act, *i.e.,* preventing capricious eviction of residential tenants while a critical shortage of moderate and low income housing exists. In order to best implement these purposes, "personally occupy" in *N.J.S.A.* 2A:18–61.1(*l*)(3) was interpreted to be restricted to residential purposes.

This court is not in disagreement with the general philosophy expressed in *Gross,* and would not dispute its application to many of the cases dealing with the "owner-occupied" exclusion. However, residential occupation should not be required in all "owner-occupied" cases.

As prior discussion indicates, our courts have not been hesitant to apply the "owner-occupied" exclusion. *Gross* involves a situation of proposed displacement of a residential unit by a commercial use, rather than substitution of one residential user for another. Commercial usage can vary greatly. A commercial user in a small scale solely owned or "mom and pop" operation, where the business owner is physically present on the premises for a considerable period of time, is as apt to have contact, and in effect live, with residential premises as much as any residential occupant. Surely, a landlord in that position, as a commercial occupier, is as entitled to similar control over his or her property and the people with whom he or she, in effect, lives as the owner whose occupation is residential. In determining whether the landlord whose occupation is strictly commercial should be allowed the owner-occupied exclusion a court should consider several factors: whether eviction of the residential tenant will convert residential space to commercial, nature of the commercial use and the extent of the landlord's proprietary interest in that use, hours of operation of the commercial use, number of people working at the commercial enterprise, and amount of time spent by the landowner at the business.

In applying those factors to plaintiff, Dee Lewis, her business is solely owned, with only a single part-time employee. Her beauty salon is open five days a week (including Saturdays) for 11 to 12 hours a day, sometimes until 8:00 p.m. Lewis is physically present running the business at all times that it is open. Her contact with the premises through her commercial occupation, in effect, causes her to live with the residential tenants to the same extent as if she simply resided on the

premises. She, thus, should be entitled to utilize *N.J.S.A.* 2A:18–53.

Judgment for possession is, thus, entered in favor of plaintiff.