639 A.2d 735

JOHN S. HARRISON, PLAINTIFF–APPELLANT, v. WILLIAM J. ZELKO, JR., DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Submitted February 1, 1994—Decided March 28, 1994.

Before Judges PRESSLER, BROCHIN and KLEINER.

*Edward F. Seavers,* Jr., attorney for appellant in both matters.

*Ronald Schwartz,* attorney for respondent in both matters.

The opinion of the court was delivered by

BROCHIN, J.A.D.

Plaintiff John S. Harrison owns 9.7 acres of land in Saddle River, New Jersey. There are a house, a cottage, and a converted barn on the property. The cottage is located approximately three-hundred feet from the house; the barn, approximately two-hundred feet from the house. The barn contains two residential apartments, one on its first floor and one on its second. According to Mr. Harrison's trial testimony,[1] the first floor unit of the barn was constructed in the 1950's pursuant to a building permit and certificate of occupancy which permitted the unit to be used

---

[1] The transcript of that trial was lost. The parties rely on a statement in lieu of record that was written by the judge and consented to as to form by both parties.

only for servants' quarters and not for rent to tenants. It has been used only for servants' quarters since it was built.

Mr. Harrison and his family live in the house. The cottage is occupied by a rent-paying tenant who has no involvement with this law suit. A family who takes care of the property in exchange for its quarters lives in the apartment that forms part of the first floor of the barn. They have never paid any monetary rent. Another part of the first floor of the barn houses what are described only as fowl and "domestic animals." Defendant William Zelko rents the apartment on the second floor of the barn. He has lived there since at least 1980.

On July 16, 1991, Mr. Harrison served Mr. Zelko with a notice directing him to quit his apartment by August 31, 1991. Mr. Zelko declined to leave voluntarily, and Mr. Harrison therefore commenced a summary action in the Law Division, Special Civil Part, for his removal. *See N.J.S.A.* 2A:18–53.

Mr. Harrison's eviction suit assumed that the State's "Anti–Eviction Law" did not require him to prove "good cause" for eviction because his entire 9.7–acre property constituted "owner-occupied premises with not more than two rental units" within the meaning of *N.J.S.A.* 2A:18–61.1. *See N.J.S.A.* 2A:18–53. He therefore did not prove "good cause" for eviction. The trial court agreed that plaintiff's entire 9.7 acres constituted only one set of "premises." But it ruled that the first floor apartment in the converted barn was a "rental unit," that the premises therefore contained more than two "rental units," and, consequently that a tenant could not be evicted without "good cause." Because Mr. Harrison's claim for possession lacked the statutory "good cause" for eviction, his suit was dismissed.

While Mr. Harrison was awaiting the trial court's decision, he notified Mr. Zelko that his rent would be increased from $600 to $650 a month effective February 1, 1992. On January 7, 1992, after the notice of increased rent had been given, but before the date on which it was to be effective, the court issued its decision refusing to evict. Mr. Harrison moved for reconsideration. That

motion was denied on January 28, 1992. On February 18, 1992, Mr. Harrison served Mr. Zelko with a notice to quit and a new notice of increased rent effective April 1, 1992. This notice demanded rent of $750 a month and a security deposit of $900.

Mr. Zelko neither moved nor paid the increased rent and security deposit. Mr. Harrison therefore commenced a new summary action for eviction. His complaint in this action alleged that he had notified Mr. Zelko of rent increases and Mr. Zelko had failed to pay. *See N.J.S.A.* 2A:18–61.1f. That provision of the Anti–Eviction Law defines "good cause" for eviction to include:

> The person has failed to pay rent after a valid notice to quit and notice of increase of said rent, provided the increase in rent is not unconscionable and complies with any and all other laws or municipal ordinances governing rent increases. . . .

At trial, the only issue raised or litigated was Mr. Zelko's contention that the increase was "unconscionable" within the meaning of the quoted provision of the statute. Mr. Harrison presented a real estate broker who testified that the fair market value of Mr. Zelko's apartment was $1100 a month. The trial judge, who was a judge other than the one who presided over the first eviction action, found as a fact that the fair rental value of the apartment was more than the $750 a month rent that Mr. Harrison was asking. The judge held, however, that raising the rent from $600 to $750 a month within a short period of time for the purpose of evicting the tenant was unconscionable. He ruled that the first rent increase to $650 a month and the demand for a security deposit of $650 were permissible.

A judgment was entered in each of these cases in accordance with these rulings, and Mr. Harrison has appealed. The two cases have not been consolidated. Pursuant to our order, however, they were submitted to us for decision on the same calendar, and we will dispose of both of them by this opinion.

■ We hold that the word "premises" in the statutory phrase "owner-occupied premises with not more than two rental units," *N.J.S.A.* 2A:18–61.1, encompasses plaintiff's entire 9.7 acres. For

that proposition, we rely, as did the trial judge in the first proceeding, on Judge Higgins–Cass's reasoning in *Fresco v. Policastro*, 186 *N.J.Super.* 204, 451 *A.*2d 1341 (Cty.Dist.Ct.1982), for her conclusion that " 'premises' should be given the broad meaning of 'land and appurtenances.' " *Id.* at 206, 451 *A.*2d 1341. Judge Higgins–Cass wrote:

> Support for this definition can be found in *N.J.S.A.* 2A:18–53 itself, which prior to the enactment of the Anti–Eviction Act covered both residential and commercial tenancies, and an amended version of which still covers owner-occupied two and three family premises and commercial tenancies. The relevant section of the earlier statute reads:
>
>> "Any lessee or tenant at will or sufferance, or for a part of a year, or for one or more years, *of any houses, buildings, lands or tenements,* and the assigns, under-tenants or legal representatives of such tenant or lessee, may be removed from such *premises....* [*N.J.S.A.* 2A:18–53 (L.1966, c. 319, Sec. 1)" [The emphasis is Judge Higgins–Cass's.]
>
> The present section is identical with the addition at the beginning thereof of the words "Except for residential lessees and tenants included in Sec. 2 of this Act."
>
> The Legislature in this state clearly defined "premises" broadly as "houses, buildings, lands or tenements." There is no indication that the Legislature, which did not define the word "premises" in the Anti–Eviction Act, intended a different meaning to apply to those cases it excepted from the coverage of *N.J.S.A.* 2A:18–61.1 and which remain subject to *N.J.S.A.* 2A:18–53.

We add this further justification. "Owner-occupied premises with not more than two rental units" were exempted from the statutory requirement of "good cause" for eviction because of the Legislature's policy decision that an owner who lives on the premises which he owns and is not engaged in large-scale renting should be entitled to exercise control over who the tenants are who live there with him. Much the same considerations which apply to the owner-occupier of a three-family house apply also to Mr. Harrison. Mr. Zelko's apartment is located on the property which Mr. Harrison reasonably considers part of his home. Interpreting the statute to give him some control over the identity of a tenant who lives in the converted barn on his homestead is consistent with the purpose of the quoted exemption provision. We overrule *Reggiori v. Petrone*, 184 *N.J.Super.* 240, 445 *A.*2d 484 (Cty.Dist.Ct.1981), which comes to a different conclusion.

■ We next consider the trial judge's ruling that the first-floor apartment in the converted barn is a "rental unit" within the meaning of *N.J.S.A.* 2A:18–61.1. The trial judge focused on the status of the occupants, pointing to the Supreme Court's having declared in *Vasquez v. Glassboro Serv. Ass'n, Inc.*, 83 *N.J.* 86, 94, 415 *A.*2d 1156 (1980), that "an employee whose housing is conditioned upon employment [is] a tenant" by virtue of *N.J.S.A.* 2A:18–61.1m. In our view, however, that holding that an employee whose housing is conditioned on his employment is a tenant is not dispositive of whether his apartment is a "rental unit[ ]" as the term is used in *N.J.S.A.* 2A:18–61.1. The Legislature has determined that a landowner who has chosen to live in premises in which apartments are let to three or more rent-paying tenants has undertaken a business and can therefore be required to surrender his right to control who else lives there. The same cannot reasonably be said about a landlord who has made living quarters on the premises available to personal employees in exchange for their taking care of the property. We hold that a dwelling unit which has always been provided as servants' quarters in exchange for services is not a "rental unit[ ]" within the meaning of the first paragraph of *N.J.S.A.* 2A:18–61.1.

Since the premises in question are "owner-occupied . . . with not more than two rental units," statutory "good cause" was not required for a judgment of eviction. We therefore reverse the judgment appealed from in A–3096–91T2, and we remand the case to the Law Division, Special Civil Part, to enter a judgment of possession in favor of plaintiff.

The second appeal, A–1194–92T2, also involves a summary proceeding for eviction in which the only relief available to the plaintiff, if he prevailed, would be possession. Consequently, in view of our disposition of the appeal in the first proceeding, the appeal from the second judgment, A–1194–92T2, is moot and we dismiss it on that ground.