SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized).

**Anna Mae Cashin v. Marisela Bello** (A-98-13) (073215)

**Argued March 3, 2015 -- Decided October 7, 2015**

**FERNANDEZ-VINA, J., writing for a unanimous Court.**

In this appeal, the Court considers whether the Anti-Eviction Act (the Act), N.J.S.A. 2A:18-61.1 to -61.12 -- which permits the "owner of a building of three residential units or less" to oust a tenant if the owner intends to "personally occupy a unit," N.J.S.A. 2A:18-61.1(*l*)(3) -- can be applied to remove a tenant from a two-story single-family house built in a converted garage by an owner who possesses a multi-unit apartment building on the same parcel of land. To that end, the Court determines whether "building" denotes a single, unattached physical structure or whether it includes all structures owned by an individual that are located on the same parcel of land.

Plaintiff Anna Mae Cashin owns a 2,435 square-foot parcel of land in Hoboken. Two separate structures are located on that property: a six-unit apartment building with the mailing address of 627 Washington Street, and a two-story single-family home built in a converted garage with the mailing address of 626 Court Street. At all relevant times, plaintiff has rented out five units of the Washington Street property and used the sixth for storage. Plaintiff lived in the Court Street home with her late husband for four years until 1971, when they began renting it out. In 1973, defendant Marisela Bello moved into that unit. Defendant continues to occupy the space with her son. Defendant's rent is $345 per month, only five dollars more than the rent she initially paid in 1973.

Plaintiff has tried to regain possession of 626 Court Street several times. She first asked defendant to leave in the 1980s so that plaintiff's daughter could live there; defendant did not comply with that request. In June 2009, plaintiff again asked defendant to leave so that plaintiff's son could live there to be closer to his parents during his father's illness. At that time, plaintiff sent defendant a notice to quit, giving her sixty days to vacate the house. In response, defendant's attorney sent a letter indicating that defendant refused to leave. Plaintiff took no further action to evict defendant at that time. On January 4, 2012, plaintiff, through her attorney, sent defendant another notice to quit. Plaintiff demanded possession of 626 Court Street under N.J.S.A. 2A:18-61.1(*l*)(3), asserting that the unit was a single-family home and that she, the owner, wished to reside there. Defendant refused to leave, and plaintiff filed a complaint for possession of the apartment on April 2, 2012.

On June 11, 2012, the trial court dismissed plaintiff's complaint. The court reasoned that N.J.S.A. 2A:18-61.1(*l*)(3) was not applicable to 626 Court Street because, even though the buildings are independent structures, 626 Court Street could not be sold separate and apart from 627 Washington Street. The trial court relied on the tax records that showed 626 Court Street was part of the same property as 627 Washington Street.

On May 6, 2013, a split Appellate Division panel affirmed the trial court's decision. The majority held that plaintiff could not invoke N.J.S.A. 2A:18-61.1(*l*)(3) because plaintiff owned a total of six residential units on the property, and, as the tax records revealed, plaintiff did not have distinguishable ownership of the Court Street property. The majority also determined that the word "building," considered in the context of N.J.S.A. 2A:18-61.1(*l*)(3), referred to the entire property, not just to one physical structure on the property; the majority concluded, therefore, that "building" should be interpreted to mean "premises." The dissent faulted the majority's determination that 626 Court Street is, in essence, an additional residential unit of 627 Washington Street.

Plaintiff appealed to this Court as of right, pursuant to Rule 2:2-1(a)(2).

**HELD**: The Legislature's use of the word "building," in its singular form, is both deliberate and dispositive. "Building" designates a discreet physical structure, not a number of such structures connected only by the ownership of the land on which they sit. By the plain language of N.J.S.A. 2A:18-61.1(*l*)(3), the converted garage constitutes its own "building" for purposes of the Act, and plaintiff may evict defendants.

1. The Court reviews this statutory construction issue de novo. The goal of statutory interpretation is to ascertain

and effectuate the Legislature's intent. When the language of a statute is clear on its face, the sole function of the courts is to enforce it according to its terms. In carrying out that function, an appellate court must read words within their context and give them their generally accepted meaning. When a statute is ambiguous as written, however, a court may consider extrinsic sources, including legislative history, committee reports, and contemporaneous construction. (pp. 8-10)

2. The Anti-Eviction Act is remedial legislation and should be liberally construed to protect the rights of tenants, with all doubts resolved in favor of the tenant. At the same time, the fact that the Act relaxes the landlord's common-law rights of ownership militates in favor of strict construction. The Court, therefore, must strike a balance between these competing interpretive tenets and, by extension, between landlords' and tenants' rights. (p. 10).

3. At issue in this appeal is the meaning of the word "building" within the following statutory provision: "No lessee or tenant or the assigns . . . may be removed by the Superior Court from any house, building, mobile home or land in a mobile home park or tenement leased for residential purposes . . . except upon establishment of one of the following grounds as good cause: . . . . The owner of a <u>building</u> of three residential units or less seeks to personally occupy a unit, or has contracted to sell the residential unit to a buyer who wishes to personally occupy it and the contract for sale calls for the unit to be vacant at the time of closing." <u>N.J.S.A.</u> 2A:18-61.1(*l*)(3) (emphasis added). Because the Act does not supply its own definition of the term "building," the Court interprets the word according to its generally accepted meaning – i.e., "a structure with walls and a roof, esp. a permanent structure." The clear language of the statute thus indicates that a landlord may remove a tenant from a unit in a freestanding physical structure that contains at most three residential units. (pp. 10-11)

4. Because the Court finds that the statute's language is not ambiguous, it need not look to extrinsic sources for guidance. Nevertheless, the Court provides an overview of the legislative history, which supports, rather than subverts, the Court's interpretation of <u>N.J.S.A.</u> 2A:18-61.1(*l*)(3). The original Anti-Eviction Act, passed in 1974, limited evictions to situations in which a landlord could establish "good cause" for removal, and further set forth eighteen distinct grounds for good cause. The Legislature included an exception, however, for situations in which landowners live on their properties and those properties contain no more than two rental units. In 1975, the Legislature amended the Act to supplement the enumerated grounds for "good cause." Among other changes, the Legislature added three reasons for which an owner can dispossess a tenant so that either the owner or someone to whom the owner has contracted to sell the property may personally occupy the unit in which the tenant resides. <u>N.J.S.A.</u> 2A:18-61-1(*l*)(1 - 3). Notably, the exception set forth in <u>N.J.S.A.</u> 2A:18-61-1(l) refers to "premises" while <u>N.J.S.A.</u> 2A:61-1(*l*)(3) refers to "buildings." This language is indicative of legislative choice. The word "building" is not synonymous with "premises," which is defined as "a tract of land with the structures on it." Had the Legislature intended to include within <u>N.J.S.A.</u> 2A:18-61.1(*l*)(3)'s three-unit limit all the units on a single parcel of land, it could have used the word "premises" rather than the term "building." (pp. 11-18)

5. In sum, the Court finds that <u>N.J.S.A.</u> 2A:18-61.1(*l*)(3) unambiguously permits the owner of a particular structure that contains no more than three residential units to oust a tenant from that building so that the owner may occupy the tenant's unit, even when other structures on the owner's property contain additional rental units. The Court, therefore, holds that plaintiff is within her rights as a landowner to remove defendant from 626 Court Street. The Court finds the tax records (which fail to identify 626 Court Street as separate from 627 Washington Street) unpersuasive in light of the longstanding actual use of the building. Because 626 Court Street is a separate building with fewer than three residential units, and because plaintiff seeks to occupy the unit that defendant is currently renting in that building, plaintiff may evict defendants under <u>N.J.S.A.</u> 2A:18-61.1(*l*)(3). (pp. 18-19)

The judgment of the Appellate Division is **REVERSED**.

**CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA, ALBIN, PATTERSON, and SOLOMON; and JUDGE CUFF (temporarily assigned) join in JUSTICE FERNANDEZ-VINA's opinion.**

ANNA MAE CASHIN,

    Plaintiff-Appellant,

        v.

MARISELA BELLO and MARTINO
BELLO,

    Defendants-Respondents.

> Argued March 3, 2015 – Decided October 7, 2015
>
> On appeal from the Superior Court, Appellate Division.
>
> Roberta L. Tarkan argued the cause for appellant.
>
> Jeffrey S. Mandel argued the cause for respondents (Cutolo Mandel, attorneys).

JUSTICE FERNANDEZ-VINA delivered the opinion of the Court.

The Anti-Eviction Act (the Act), N.J.S.A. 2A:18-61.1 to - 61.12 permits the "owner of a building of three residential units or less" to oust a tenant if the owner intends to "personally occupy a unit." N.J.S.A. 2A:18-61.1(*l*)(3). In this appeal, the Court determines whether that provision can be applied to remove a tenant from a two-story single-family house built in a converted garage by an owner who possesses a five-unit apartment building on the same parcel of land.

The question, in other words, is whether "building" denotes a single, unattached physical structure -- an interpretation that would permit ouster of the tenant in this case -- or whether "building" includes all structures owned by an individual that are located on the same parcel of land. If "building" has the latter definition, plaintiff Anna Mae Cashin, who owns a total of six residential units on a single parcel of land, is prohibited from evicting defendant Marisela Bello, who has rented the house since 1973 and currently lives there with her son, defendant Martino Bello.

We find the Legislature's use of the word "building," in its singular form, to be both deliberate and dispositive. "Building" designates a discreet physical structure, not a number of such structures connected by nothing more than the ownership of the land on which they sit. By the plain language of N.J.S.A. 2A:18-61.1(*l*)(3), we hold that the converted garage constitutes its own "building" for purposes of the Act, and that plaintiff may therefore evict defendants. We accordingly reverse the judgment of the Appellate Division.

I.

In 1966, plaintiff and her late husband purchased a 2,435 square-foot parcel of land in Hoboken, New Jersey. The land is bordered by Washington Street to the east and Court Street to the west. Two separate structures are located on that property:

2

a six-unit apartment building with the mailing address of 627 Washington Street, and a two-story single-family home built in a converted garage with the mailing address of 626 Court Street.

From the outset, plaintiff and her husband rented out five units of the Washington Street property and used the sixth for storage. The building continues to be used in this way. Additionally, plaintiff and her husband converted a two-car garage on their land into a house. The husband, a professional engineer, ensured that all the proper permits were obtained for the conversion.

Plaintiff and her husband lived in the house for four years. When they moved out of the home in 1971, they began renting it out. In 1973, defendant Marisela Bello moved into that unit. She continues to occupy the space with her son, Martino. Defendant's rent is $345 per month, only five dollars more than the rent she initially paid in 1973.

Although the Court Street unit has its own address, the relevant tax records do not reflect the converted garage as a separate property. Nor does a separate deed exist for that unit. Although plaintiff remembered applying to the Planning Board for permission to divide the property, there is no record of any application filed with either the Zoning or Planning Boards. The tax records indicate that plaintiff does not pay separate taxes on the Court Street rental; plaintiff and her

3

husband did, however, report income from the Court Street property on their Annual Statement of Income and Expenses for Apartment Properties, as required by N.J.S.A. 54:4-34.

Plaintiff has tried to regain possession of the 626 Court Street apartment from defendant Marisela Bello several times. She first asked Ms. Bello to leave in the 1980s so that plaintiff's daughter could live in the converted-garage unit; defendant did not comply with that request.

In June 2009, when plaintiff's husband became ill, plaintiff again asked defendant to leave so that plaintiff's son could move into the apartment to be closer to his parents during his father's illness. At that time, plaintiff sent defendant a notice to quit, giving her sixty days to vacate the house. In response, defendant's attorney sent a letter indicating that defendant refused to leave the premises. Plaintiff took no further action to evict defendant at that time.

On January 4, 2012, plaintiff, through her attorney, sent defendant another notice to quit. Plaintiff demanded possession of the 626 Court Street apartment under N.J.S.A. 2A:18-61.1(*l*)(3). Plaintiff asserted that the unit was a single-family home and that she, the owner, wished to reside in the apartment. Defendant refused to leave, and plaintiff filed a complaint for possession of the apartment on April 2, 2012.

4

In a written decision issued on June 11, 2012, the trial court dismissed the complaint. The court reasoned that the ground for eviction in N.J.S.A. 2A:18-61.1(*l*)(3) was not applicable to the 626 Court Street apartment because, even though the buildings are independent structures, 626 Court Street could not be sold separate and apart from 627 Washington Street. In rendering its decision, the trial court relied on the tax records that showed 626 Court Street was part of the same property as 627 Washington Street.

On May 6, 2013, a split Appellate Division panel affirmed the trial court's decision. The majority held that plaintiff could not invoke N.J.S.A. 2A:18-61.1(*l*)(3) because plaintiff owned a total of six residential units, not "three or less," on the property on which the unit she sought to occupy was located. Focusing on the legislative intent of the statute, the majority stressed that the Act was enacted to protect "blameless tenants" from eviction, particularly those who are vulnerable, such as poor and elderly tenants. The majority further reasoned that the Court Street apartment could not be considered separate from 627 Washington Street because, as the tax records revealed, plaintiff did not have distinguishable ownership of the Court Street property. Lastly, the majority determined that the word "building," considered in the context of N.J.S.A. 2A:18-61.1(*l*)(3), referred to the entire property, not just to one

5

physical structure on the property; the majority concluded, therefore, that "building" should be interpreted to mean "premises."

The dissent faulted the majority's determination that 626 Court Street is, in essence, an additional residential unit of 627 Washington Street. In particular, the dissent disagreed with the majority's reliance on the tax records, asserting that they are not dispositive. According to the dissent, the actual use of the structure over the last forty-five years is more informative, and that history of use reveals that the converted garage has functioned as an independent single-family home since the 1960's. The dissent also highlighted the undisputed testimony that the City of Hoboken had approved and granted permits for the conversion of the garage into a single-family dwelling.

By virtue of the dissent, plaintiff appealed to this Court as of right pursuant to Rule 2:2-1(a)(2).

II.

Plaintiff challenges the Appellate Division interpretation that the word "building," as used in N.J.S.A. 2A:18-61.1(*l*)(3), means "premises." She argues that the word "building" is clear and unambiguous, and that reliance on legislative intent for the interpretation of that word is therefore inappropriate. Plaintiff claims that "building" should be strictly construed

according to its dictionary definition: "a usually roofed and walled structure built for permanent use." Thus, since 626 Court Street and 627 Washington Street are separate buildings, plaintiff maintains that N.J.S.A. 2A:18-61.1(*l*)(3) applies to the converted-garage unit.

Plaintiff also argues that both the trial court and the Appellate Division majority disregarded her rights under the Act. She takes issue with the trial court's view of 626 Court Street as a "garage" when it has been used as a single-family home for over forty years, and she seeks to enforce her rights as the owner of a building with three or fewer units.

Defendant Marisela Bello contends that the term "building" in N.J.S.A. 2A:18-61.1(*l*)(3) is ambiguous when considered in the context of other statutes that regulate eviction. Defendant notes that N.J.S.A. 2A:18-53 and N.J.S.A. 2A:18-61.1 both refer to "premises," but that the former "precedes the word with the phrase 'any houses, buildings, lands or tenements,'" whereas the latter statute "refers to those structures in the singular." Despite the use of the singular in N.J.S.A. 2A:18-61.1, defendant observes, the Appellate Division construed the statute to apply to multiple structures on a single property in Harrison v. Zelko, 272 N.J. Super. 219 (App. Div. 1994). Defendant argues that N.J.S.A. 2A:18-1(*l*)(3) and N.J.S.A. 2A:18-61.1 "further the same public policy and . . . are contingent upon

7

there being an owners' unit plus two rental units."  She asserts that those provisions should therefore be construed in the same way, even though "one section employs the word 'premises' and one the word 'building.'"

Defendant contends that public policy favors the Appellate Division's expansive interpretation of the word "building."  The Act is remedial, tenant-protective legislation, she argues, and should therefore be liberally construed in favor of tenants. According to defendant, a narrow construction of "building" would improperly expand the authority of landlords to evict tenants under the Act, which distinguishes between small-scale and large-scale ownership.  Because plaintiff's property features six residential units, defendant maintains, plaintiff is a large-scale renter.  Defendant contends that, as a result, plaintiff "falls beyond the intended protections of both [N.J.S.A. 2A:18-61.1(*l*)(3)'s] exemption for an owner-occupied premises and [N.J.S.A. 2A:18-61.1's] 'good cause' basis to evict."

### III.

As with all issues of statutory construction, our review in this matter is de novo.  Perez v. Zagami, LLC, 218 N.J. 202, 209 (2014).  It is well settled that the goal of statutory interpretation is to ascertain and effectuate the Legislature's intent.  Murray v. Plainfield Rescue Squad, 210 N.J. 581, 592

(2012) (citing DiProspero v. Penn, 183 N.J. 477, 492 (2005)). "In most instances, the best indicator of that intent is the plain language chosen by the Legislature." State v. Gandhi, 201 N.J. 161, 176 (2010) (citing DiProspero, supra, 183 N.J. at 492). "[W]hen the language of a statute is clear on its face, 'the sole function of the courts is to enforce it according to its terms.'" Hubbard v. Reed, 168 N.J. 387, 392 (2001) (quoting Sheeran v. Nationwide Mut. Ins. Co., 80 N.J. 548, 556 (1979)). In carrying out that function, an appellate court must read words "with[in] their context" and give them "their generally accepted meaning." N.J.S.A. 1:1-1. A court "may neither rewrite a plainly-written enactment of the Legislature nor presume that the Legislature intended something other than that expressed by way of the plain language." O'Connell v. State, 171 N.J. 484, 488 (2002).

When a statute is ambiguous as written, however, a court may consider extrinsic sources, including "legislative history, committee reports, and contemporaneous construction." State v. Fleischman, 189 N.J. 539, 548 (2007) (citing DiProspero, supra, 183 N.J. at 492-93). Such ambiguity can arise when a statute "is subject to varying plausible interpretations," or when literal interpretation of the statute would lead to a result that is inherently absurd or at odds with either public policy

9

or the overarching statutory scheme of which it is a part. Ibid.

The legislative act at issue in this case, the Anti-Eviction Act, is remedial legislation; it should therefore be liberally construed to protect the rights of tenants, with all doubts resolved in favor of the tenant. N.J.S.A. 2A:18-61.39; Cmty. Realty Mgmt. v. Harris, 155 N.J. 212, 227 (1998). At the same time, the fact that the Act relaxes the landlord's common-law rights of ownership militates in favor of strict construction. See Terhune Courts v. Sgambati, 163 N.J. Super. 218, 223 (Cnty. Dist. Ct. 1978), aff'd o.b., 170 N.J. Super. 477 (App. Div. 1979), certif. denied, 84 N.J. 418 (1980). In interpreting the Act, therefore, a court must strike a balance between these competing interpretive tenets and, by extension, between landlords' rights and tenants' rights.

IV.

We apply these principles to the statute on which this case turns, N.J.S.A. 2A:18-61.1(*l*)(3), which provides:

> No lessee or tenant or the assigns . . . may be removed by the Superior Court from any house, building, mobile home or land in a mobile home park or tenement leased for residential purposes . . . except upon establishment of one of the following grounds as good cause:
>
> . . . .

10

> The owner of a <u>building</u> of three residential units or less seeks to personally occupy a unit, or has contracted to sell the residential unit to a buyer who wishes to personally occupy it and the contract for sale calls for the unit to be vacant at the time of closing.
>
> [(Emphasis added).]

At issue is the meaning of the word "building" within that provision. Because the Act does not supply its own definition of the term, we interpret the word according to its generally accepted meaning. See <u>In re Plan for the Abolition of the Council on Affordable Hous.</u>, 214 <u>N.J.</u> 444, 467 (2013). In its primary sense, "building" refers to "a structure with walls and a roof, esp. a permanent structure." <u>Black's Law Dictionary</u> 222 (9th ed. 2009).

The clear language of the statute thus indicates that a landlord may remove a tenant from a unit in a freestanding physical structure that contains at most three residential units. The statute's language is not ambiguous, so we need not look to extrinsic sources for guidance. We nevertheless note that, contrary to defendant's argument, both the legislative history of the Act and its varied vocabulary support, rather than subvert, this most straightforward interpretation of <u>N.J.S.A.</u> 2A:18-61.1(*l*)(3).

V.

11

The Anti-Eviction Act was passed in 1974 to protect residential tenants "against arbitrary and unreasonable actions by landlords."  Statement from Governor Brendan Byrne on Signing Assemb. Bill No. 1586 (June 25, 1974).  A legislative statement accompanying the Act explained that,

> [a]t present, there are no limitations imposed by statute upon the reasons a landlord may utilize to evict a tenant.  As a result, residential tenants frequently have been unfairly and arbitrarily ousted from housing quarters in which they have been comfortable and where they have not caused any problems. This is a serious matter, particularly now that there is a critical shortage of rental housing space in New Jersey.  This act shall limit the eviction of tenants by landlords to reasonable grounds and provide that suitable notice shall be given to tenants when an action for eviction is instituted by the landlord.
>
> [Sponsors' Statement Appended to Assemb. Bill No. 1586, L. 1974, c. 49, § 2.]

The original Act thus limited evictions to situations in which a landlord could establish "good cause" for removal and set forth eighteen distinct grounds for good cause.  See A.P. Dev. Corp. v. Band, 113 N.J. 485, 493 (1988) (citing N.J.S.A. 2A:18-61.1).

The Legislature included an exception to this rule, however, for situations in which landowners live on their properties when those properties also contain no more than two rental units.  L. 1974, c. 49, § 2.  This "owner-occupied

12

premises rule" is codified at N.J.S.A. 2A:18-61.1(*1*) and provides in pertinent part that

> [n]o lessee or tenant or the assigns . . . may be removed by the Superior Court from any house, building, mobile home or land in a mobile home park or tenement leased for residential purposes, other than (1) owner-occupied premises with not more than two rental units or a hotel, motel or other guest house or part thereof rented to a transient guest or seasonal tenant[.]
>
> [(Emphasis added).]

N.J.S.A. 2A:18-61.1(*1*) grants landlords who reside in a unit on the rented premises "some control over the persons with whom [they] live[]." Durruthy v. Brunert, 228 N.J. Super. 199, 202 (App. Div. 1988), certif. denied, 114 N.J. 482 (1989). "This exception resulted from the Legislature's recognition of the unfairness of forcing residential landlords to live with tenants whom they found to be unfavorable." McQueen v. Brown, 342 N.J. Super. 120, 132 (App. Div. 2001) (citation and internal quotation marks omitted), aff'd o.b., 175 N.J. 200 (2002). Thus, owners living on a property that also includes up to two rental units do not need to show good cause prior to evicting a tenant from one of those units.

The exception applies not only when the landlord and tenants reside in a single physical structure, but also when the landlord and tenants reside in separate structures built on the same plot of land, so long as the property contains no more than

13

two rental units.  See id. at 134 (applying exception where landlord and tenant reside in single physical structure); Harrison, supra, 272 N.J. Super. at 222 (applying exception when landlord and tenant reside in different structures on landlord's land).

The Legislature amended the Act in 1975 to supplement the enumerated grounds for "good cause."  L. 1975, c. 311, § 1. Among other changes, the Legislature added three reasons for which an owner can dispossess a tenant so that either the owner or someone to whom the owner has contracted to sell the property may personally occupy the unit in which the tenant resides. N.J.S.A. 2A:18-61.1(l)(1 - 3).

N.J.S.A. 2A:18-61.1(l) was added after the Law Division found the Act to be unconstitutional insofar as it "prohibit[ed landlords] from exercising a possessory interest in any part of their property unless and until the present tenant either chooses to vacate the apartment or commits an act which constitutes good cause for eviction under the statute."  Sabato v. Sabato, 135 N.J. Super. 158, 172 (Law Div. 1975).  The Law Division noted that "the [A]ct seems to have created a novel right in the tenant, whose possessory interest has traditionally been inferior to the fee simple interest of the landlord." Ibid.  The court ultimately determined that this "novel right" was an "absolute act of a taking by the state [in] violation of

14

the Fourteenth Amendment," and that "[a] regulation which deprives an owner of all or most of his interest is also . . . an unreasonable exercise of the police power." Id. at 173 (quotation marks omitted). "[T]hirty-three days after the decision came down in Sabato v. Sabato, . . . the sponsors of the Anti-Eviction Act introduced amendments to the Act," including the addition of N.J.S.A. 2A:68-1.1(*l*)(3). Howard L. Hensel, Note, New Jersey's Anti-Eviction Act Prohibits Removal of Residential Tenants by Foreclosing Mortgagee Upon Default of Landlord-Mortgagor, Absent "Good Causes," 11 Seton Hall L. Rev. 311, 317 n.37 (1980). One commentator has observed that the amendments "in some respects served as a codification of early interpretive case law." Id. at 317.

The addition of N.J.S.A. 2A:18-61.1(*l*) thus complemented the "owner-occupied premises" exception: N.J.S.A. 2A:18-61.1(*l*) allows "a landlord who already occupies his own ['premises'] with no more than two rental units to evict a tenant without demonstrating 'good cause,' and N.J.S.A. 2A:18-61.1(*l*)(3) permits a landlord who does not yet occupy [a ']building['] to displace a tenant in order to make an apartment available for [the landlord's personal] use." Aquino Colonial Funeral Home v. Pittari, 245 N.J. Super. 585, 590 (App. Div. 1991).

That N.J.S.A. 2A:18-61.1(*l*) refers to "premises" while N.J.S.A. 2A:18-61.1(*l*)(3) refers to "buildings" indicates

15

legislative choice, not inconsistency.  "'[W]here [the Legislature] includes particular language in one section of the statute but omits it in another section of the same [a]ct, it is generally presumed that [the Legislature] acts intentionally and purposely in the disparate inclusion or exclusion.'"  N.J. Dep't of Children & Families, Div. of Youth & Family Servs. v. A.L., 213 N.J. 1, 20-21 (2013) (quoting INS v. Cardoza-Fonseca, 480 U.S. 421, 432, 107 S. Ct. 1207, 1213, 94 L. Ed. 2d 434, 448 (1987)).

The Legislature used both the word "building" and the word "premises" in N.J.S.A. 2A:18-61.1(1), which sets forth the good-cause rule.  "[B]uilding" features in the list of housing types from which a tenant cannot be removed without "good cause," alongside such other structures as a "house," a "mobile home or land in a mobile home park," and a "tenement leased for residential purposes."  N.J.S.A. 2A:18-61.1.  "[P]remises," on the other hand, identifies what the owner must occupy to be exempt from the good-cause rule.  N.J.S.A. 2A:18-16.1(1). Significantly, good cause need not be shown in the case of "owner-occupied premises," N.J.S.A. 2A:18-61.1(1), or "a dwelling unit" held in trust for, or occupied by, a member of the owner's immediate family with a developmental disability, N.J.S.A. 2A:18-61.1(2), (3).  These pointed shifts in terminology make it clear that the Legislature had a full quiver

16

of words with which to express its intent and that its choice to use "building" in N.J.S.A. 2A:18-61.1(*l*)(3) was both deliberate and meaningful.

"Building" is not synonymous with "premises," which is defined as "a tract of land with the structures on it." Webster's Third New Int'l Dictionary 1789 (3d ed. 1981); see also Black's Law Dictionary, supra, at 1300 ("a house or building, along with its grounds"). In accordance with its definition, the term "premises" is typically interpreted to mean a broader area than just a "building." Twp. of Maplewood v. Tannenhaus, 64 N.J. Super. 80, 86-87 (App. Div. 1960), certif. denied, 34 N.J. 325 (1961); see also Ford Motor Co. v. N.J. Dep't of Labor & Indus., 5 N.J. 494, 503 (1950) (defining "premises" as "the property conveyed in a deed; hence, in general, a piece of land or real estate; sometimes . . . a building or buildings on land").

Had the Legislature intended to include within N.J.S.A. 2A:18-61.1(*l*)(3)'s three-unit limit all the units on a single parcel of land, it could have used the word "premises" not the term "building." Instead, the Legislature elected to grant landlords greater ability to assert their ownership rights when seeking to occupy their own buildings of up to three residential units in response to a judicial determination that the 1974 Act

17

was in part unconstitutional for failing to protect those very rights.

We will not impute to the Legislature an intent that conflicts with its own clear and significant choice of words. O'Connell, supra, 171 N.J. at 488. We find that N.J.S.A. 2A:18-61.1(*l*)(3) unambiguously permits the owner of a particular structure that contains no more than three residential units to oust a tenant from that building so that the owner may occupy the tenant's unit, even when other structures on the owner's property contain additional rental units.

## VI.

Applying this interpretation of N.J.S.A. 2A:18-61.1(*l*)(3) to the facts in this matter, we hold that plaintiff is within her rights as a landowner to remove defendant from 626 Court Street. The detached garage has served as a residence since 1966. Even more compelling is the fact that defendant Marisela Bello has been renting the apartment since 1973. Defendant pays rent to live in that separate apartment; she also receives mail at that location, which has its own mailing address. We find the failure of the tax records to identify the building as a separate apartment unpersuasive in light of the longstanding actual use of the building. Because 626 Court Street is a separate building with fewer than three residential units, and because plaintiff owner seeks to occupy the unit that defendant

18

is currently renting in that building, we hold that plaintiff may evict defendants under N.J.S.A. 2A:18-61.1(*l*)(3).

## VII.

For the reasons stated herein, we reverse the judgment of the Appellate Division.

CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA, ALBIN, PATTERSON, and SOLOMON; and JUDGE CUFF (temporarily assigned) join in JUSTICE FERNANDEZ-VINA's opinion.

SUPREME COURT OF NEW JERSEY

NO.     A-98                              SEPTEMBER TERM 2013

ON APPEAL FROM        Appellate Division, Superior Court


ANNA MAE CASHIN,

        Plaintiff-Appellant,

                v.

MARISELA BELLO and MARTINO
BELLO,

        Defendants-Respondents.


DECIDED          October 7, 2015
                 Chief Justice Rabner                        PRESIDING
OPINION BY        Justice Fernandez-Vina
CONCURRING/DISSENTING OPINION BY
DISSENTING OPINION BY

| CHECKLIST | REVERSE | |
| --- | --- | --- |
| CHIEF JUSTICE RABNER | X | |
| JUSTICE LaVECCHIA | X | |
| JUSTICE ALBIN | X | |
| JUSTICE PATTERSON | X | |
| JUSTICE FERNANDEZ-VINA | X | |
| JUSTICE SOLOMON | X | |
| JUDGE CUFF (t/a) | X | |
| TOTALS | 7 | |