NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-3676-14T1

MICHAEL TOMPKINS,

 Plaintiff-Appellant,

v.

JOHN SCOTT THOMSON, LOUIS VEGA,
CHRISTINE JONES-TUCKER, CITY OF
CAMDEN, CAMDEN COUNTY PROSECUTOR,

 Defendants-Respondents,

and

ARTURO VENEGAS and
STATE OF NEW JERSEY,

 Defendants.
_______________________________

 Argued March 2, 2017 - Decided June 26, 2017

 Before Judges Lihotz, Hoffman and Whipple.

 On appeal from Superior Court of New Jersey,
 Law Division, Camden County, Docket No. L-
 6194-09.

 Heidi R. Weintraub argued the cause for
 appellant (Weintraub & Marone, LLC, attorneys;
 Ms. Weintraub, on the briefs).
 John C. Eastlack, Jr. argued the cause for
 respondents John Scott Thomson, Louis Vega,
 Christine Jones-Tucker and City of Camden
 (Weir & Partners, LLP, attorneys; Mr. Eastlack
 and Daniel E. Rybeck, on the brief).

 Anne E. Walters, Assistant County Counsel,
 argued the cause for respondent Camden County
 Prosecutor's Office (Christopher A. Orlando,
 County Counsel, attorney; Ms. Walters and
 Howard L. Goldberg, First Assistant County
 Counsel, on the brief).

PER CURIAM

 In 2003, the New Jersey Attorney General directed defendant,

the Camden County Prosecutor (the Prosecutor) to assume control

over the daily management of the Camden City Police Department

(the Department). The Camden County Board of Chosen Freeholders

(Freeholders) entered into a consulting agreement with defendant

Arturo Venegas, engaging him as the Supersession Executive, who

would oversee the operations of the Department on behalf of the

Prosecutor.

 Plaintiff Michael Tompkins filed a complaint alleging

defendants violated the New Jersey Law Against Discrimination,

N.J.S.A. 10:5-1 to -49. More specifically, plaintiff alleged he

was the victim of discrimination and a hostile work environment

as a result of conduct favoring minorities by defendants Venegas,

who acted on behalf of the Department, the City of Camden (the

City) and its officials. Further, he alleged the City, John Scott

 2 A-3676-14T1
Thomson, the Chief of Police, and Christiane Jones-Tucker, the

City's Business Administrator, took no steps to prevent the

discriminatory conduct and engaged in retaliation.1

 Prior to trial, the Law Division judge granted the

Prosecutor's motion for summary judgment, concluding there was no

basis for liability because the Prosecutor was not appellant's

employer. After voluntarily dismissing with prejudice all claims

against Venegas, plaintiff proceeded to trial against the City and

its officials. The jury returned a verdict of no cause of action.

 On appeal, plaintiff argues the judge erroneously dismissed

the Prosecutor from the action, urging the Prosecutor was

responsible as Venegas' superior and as a "joint employer."

Further, plaintiff raises several evidentiary rulings, which he

maintains require a new trial.

 We have considered each of plaintiff's arguments in light of

the record and the applicable law. We affirm.

 I.

 Acting Attorney General Peter C. Harvey ordered the

Prosecutor to "supersede the management, administration[,] and

operation" of the Department on March 17, 2003. The Freeholders

1
 Plaintiff's claims against the State of New Jersey were
dismissed on March 3, 2010. Plaintiff asserts no challenge to
this order.

 3 A-3676-14T1
executed a consulting agreement with Venco, a California

corporation, to engage its president, Venegas, who was to provide

"law enforcement services for the Prosecutor, the Camden Police

Department and County of Camden."

 The agreement specified Venegas' tasks, which included:

"daily management" of the Department "to the extent allowed by the

law;" representing the Prosecutor "in overseeing all police

department activities, reporting to the Prosecutor on deficiencies

and the plan to correct them;" and to "[d]evelop policies and

procedures to modernize practices in the police department to

reflect generally accepted national standards[.]" More

specifically, as the Supercession Executive, Venegas was to

 [a]. Set forth clear standards of performance
 for the police department and its employees
 and implement a system of progressive
 discipline that holds both employees and their
 managers accountable for performance and
 behavior;

 [b]. Support the development of managers
 throughout the department through mentoring
 and training so that a chief of police can be
 selected from inside the department;

 [c]. Bring employee groups (such as unions)
 into the planning and implementation process
 so they feel a part of the vision for policing
 Camden and feel rewarded for the
 accomplishments achieved. . . .

 Plaintiff began his employment with the Department in 1986

and rose to the rank of Deputy Chief of Police, the position held

 4 A-3676-14T1
when his employment ended in 2011. Plaintiff alleged between

January 2006 and January 2008, Venegas and others committed acts

of discrimination toward him. The second amended complaint

detailed incidents occurring between January 2006 and January

2008, which comprise the basis of his causes of action. Briefly,

the discriminatory conduct alleged includes: (1) Venegas treated

plaintiff in a "condescending and derogatory manner"; (2)

plaintiff believed "Venegas ordered or authorized" others to break

into and search his office; (3) plaintiff was arbitrarily passed

over for training opportunities, which were extended instead to

less senior and less experienced minority officers; (4) Venegas

undermined plaintiff's authority by micromanaging his duties and

repeatedly sought to have him disciplined; and (5) Venegas

generally criticized his performance.

 Consequences of the discriminatory conduct were also stated.

Plaintiff was transferred from Deputy Chief of Operations to Deputy

Chief of Technical Services. Thereafter, as result of another

incident, whereby plaintiff opened a sealed envelope containing

an internal affairs report investigating his conduct, plaintiff

was suspended. Plaintiff challenged the suspension asserting it

not only failed to comply with required Attorney General

Guidelines, but also was "part and parcel of Venegas and Jones-

Tucker's efforts to force [him] from his position of public

 5 A-3676-14T1
employment in order to favor minority candidates without regard

to the merits of their promotion."

 After a full review conducted by the Prosecutor's Office, the

hearing officer concluded plaintiff's actions in opening the

envelope were in part justified, and recommended plaintiff receive

a written reprimand and a six-day suspension for not revealing his

actions. However, Jones-Tucker rejected the hearing officer's

recommendation and, instead imposed a six-month suspension,

without pay.

 Plaintiff alleged Chief Thomson wrongfully retaliated against

him by ignoring his reports of Venegas' discriminatory conduct,

and making it clear plaintiff should not return to the Department.

Thereafter, the City granted plaintiff's request for medical leave

and sought he undergo an independent evaluation from a "mutually

agreeable" physician, prior to returning to employment. A mutually

acceptable medical provider was not designated. On January 31,

2011, plaintiff's employment was terminated for being absent

without leave.

 II.

 On appeal, plaintiff challenges the grant of summary judgment

dismissing the Prosecutor's office from this action and trial

rulings excluding evidence which plaintiff argues was admissible

 6 A-3676-14T1
and essential to proving his causes of action. We examine these

claims.

 A.

 Our review of an order granting summary judgment applies the

same standard utilized by the trial judge. Qian v. Toll Bros.

Inc., 223 N.J. 124, 134-35 (2015). We "must review the competent

evidential materials submitted by the parties to identify whether

there are genuine issues of material fact and, if not, whether the

moving party is entitled to summary judgment as a matter of law."

R. 4:46-2(c). Bhagat v. Bhagat, 217 N.J. 22, 38 (2014); see also

Townsend v. Pierre, 221 N.J. 36, 59 (2015).

 Under this standard, we must construe all facts in the light

most favorable to the non-moving party. Robinson v. Vivirito, 217

N.J. 199, 203 (2014). If "the evidence submitted by the parties

on the motion, together with all legitimate inferences therefrom

favors the non-moving party," then summary judgment is

inappropriate, and matter must be submitted for review by the

trier of fact. R. 4:46(c). However, summary judgment should be

granted when "the pleadings, depositions, answers to

interrogatories and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any

material fact challenged and that the moving party is entitled to

a judgment or order as a matter of law." R. 4:46-2(c); see Schiavo

 7 A-3676-14T1
v. Marina Dist. Dev. Co., 442 N.J. Super. 346, 36, (App. Div.

2015) ([We] "keep[] in mind '[a]n issue of fact is genuine only

if, considering the burden of persuasion at trial, the evidence

submitted by the parties on the motion . . . . would require

submission of the issue to the trier of fact.'") (quoting R. 4:46-

2(c)), certif. denied, 224 N.J. 124 (2016).

 "Purely legal questions . . . are questions of law

particularly suited for summary judgment." Badiali v. N.J. Mfrs.

Ins. Group, 220 N.J. 544, 555 (2015) (citation omitted). In our

de novo review of questions of law, we accord no deference to the

motion judge's "interpretation of the law and the legal

consequences that flow from established facts." Manahawkin

Convalescent v. O'Neill, 217 N.J. 99, 115 (2014). Certainly, when

competing claims require us to "construe certain statutory

provisions . . .[,] [a] de novo standard of review applies."

Selective Ins. Co. of Am. v. Hudson E. Pain Mgmt., 210 N.J. 597,

605 (2012).

 In granting the Prosecutor's motion for summary judgment, the

motion judge found the evidence did not show the Prosecutor was

plaintiff's employer, which at all times was the City of Camden.

Finding "no fundamental employment relationship," the judge

concluded the Prosecutor had no liability. Plaintiff asserts "New

Jersey courts have recognized that a [plaintiff] may be deemed to

 8 A-3676-14T1
be jointly employed by two entities for purposes of protection

under the LAD." Plaintiff maintains when the Prosecutor took

complete control of the Department, it too became plaintiff's

employer.

 The LAD prohibits discrimination based on an individual's

race or origin, N.J.S.A. 10:5-3, and requires proof of an intent

to discriminate. See El-Sioufi v. St. Peter's Univ. Hosp., 382

N.J. Super. 145, 179 (App. Div. 2005) (noting "because . . . the

invidious nature of discrimination . . . may [make it] possible

to infer an intent to discriminate, not every offensive remark,

even if direct, is actionable"). The LAD, proscribes:

 an employer, because of the race, creed,
 color, national origin, ancestry, age, marital
 status, . . . or the nationality of any
 individual, . . . to refuse to hire or employ
 or to bar or to discharge or require to retire,
 unless justified by lawful considerations
 other than age, from employment such
 individual or to discriminate against such
 individual in compensation or in terms,
 conditions or privileges of employment. . . .

 [N.J.S.A. 10:5-12(a)].

 Plaintiff's arguments on appeal hinge on the application of

the word "employer." Ibid. "It is well settled that the goal of

statutory interpretation is to ascertain and effectuate the

Legislature's intent." Cashin v. Bello, 223 N.J. 328, 335 (2015).

"In most instances, the best indicator of that intent is the plain

 9 A-3676-14T1
language chosen by the Legislature." Ibid. (citation omitted). We

"must read words 'with[in] their context' and give them 'their

generally accepted meaning.'" Ibid. (quoting N.J.S.A. 1:1-1).

Statutory language is to be interpreted "in a common sense manner

to accomplish the legislative purpose." N.E.R.I. Corp. v. N.J.

Highway Auth., 147 N.J. 223, 236 (1996). "When a statute is

ambiguous as written, however, a court may consider extrinsic

sources, including 'legislative history, committee reports, and

contemporaneous construction.'" Cashin, supra, 223 N.J. at 335-

36 (citations omitted).

 The LAD prohibits conduct occurring in the context of an

employer-employee relationship. Pukowsky v. Caruso, 312 N.J.

Super. 171, 184 (App. Div. 1998). The term "employer" is defined

to include "the State, any political or civil subdivision thereof,

and all public officers, agencies, boards or bodies." N.J.S.A.

10:5-5(e). Further, we have instructed courts "'must look beyond

the label attached to [employer/employee] relationship' to

determine whether an employer/employee relation exists for the

purposes of bringing a hostile work environment claim." Hoag v.

Brown, 397 N.J. Super. 34, 47 (App. Div. 2007). In this regard,

this court developed a twelve-factor test to ascertain whether a

person is an employee under N.J.S.A. 10:5-5(f). Thomas v. Cnty.

 10 A-3676-14T1
of Camden, 386 N.J. Super. 582, 595 (App. Div. 2006). The twelve

factors are:

 (1) the employer's right to control the means
 and manner of the worker's performance; (2)
 the kind of occupation -- supervised or
 unsupervised; (3) skill; (4) who furnishes the
 equipment and workplace; (5) the length of
 time in which the individual has worked; (6)
 the method of payment; (7) the manner of
 termination of the work relationship; (8)
 whether there is annual leave; (9) whether the
 work is an integral part of the business of
 the "employer"; (10) whether the worker
 accrues retirement benefits; (11) whether the
 "employer" pays social security taxes; and
 (12) the intention of the parties.

 [D'Annunzio v. Prudential Ins. Co. of America,
 383 N.J. Super. 270, 278 (App. Div. 2006)
 (citing Pukowsky v. Caruso, 312 N.J. Super.
 171, 182-83 (App. Div. 1998)).]

 This test "requires more than the listing of factors on each

side of the ledger with victory going to the side garnering the

most factors." Chrisanthis v. Cnty. of Atlantic, 361 N.J. Super.

448, 456 (App. Div. 2003). "Where there exist several indicia of

employee status, the mere presence or absence of two or three of

them -- without a reasoned balancing of the above factors -- cannot

dictate the outcome of a summary judgment motion." Carney v.

Dexter Shoe Co., 701 F. Supp. 1093, 1099 (D.N.J. 1988).

 We have identified "[t]he most important of these factors is

the first, the employer's right to control the means and manner

of the worker's performance." Chrisanthis, supra, 361 N.J. Super.

 11 A-3676-14T1
at 455. "In analogous situations arising under federal anti-

discrimination laws, the Third Circuit Court of Appeals has adopted

a de facto test that measures the extent of the employer's control

over the employee." Thomas, supra, 386 N.J. Super. at 596 (citing

Graves v. Lowery, 117 F.3d 723, 729-30 (3d Cir. 1997)). The

control test is also applied to determine the status of an employer

when reviewing Title VII hostile work environment claims. See

Graves, supra, 117 F.3d at 728; Ass'n of Mexican-American Educators

v. California, 231 F.3d 572, 582-83 (9th Cir. 2000); Mangram v.

General Motors, 108 F.3d 61, 62-63 (4th Cir. 1997); E.E.O.C. v.

Illinois, 69 F.3d 167, 169 (7th Cir. 1995).

 Generally, County Prosecutors have broad supervisory

authority over the operations of municipal police departments.

See Cherrits v. Village of Ridgewood, 311 N.J. Super. 517, 532

(App. Div. 1998). Nevertheless, as we discussed in Thomas, to

apply the LAD to the putative employer's discriminatory conduct,

the control test requires a party, which does not directly employ

the plaintiff, to engage in conduct demonstrating it nevertheless

exercised such control over a plaintiff's employment. Thomas,

supra, 386 N.J. Super. at 596-97. "Indirect liability results

when the defendant employer 'so far control[s] the plaintiff's

employment relationship that it [is] appropriate to regard the

defendant as the de facto or indirect employer of the plaintiff.

 12 A-3676-14T1
. . .'" Id. at 597 (quoting E.E.O.C., supra, 69 F.3d at 169). We

cited authorities illustrating a de facto employer's qualifying

conduct, such as imposing hiring requirements, controlling hirings

or firings, and mandating training programs employees must

complete. Id. at 596-97.

 The motion judge, although acknowledging the Attorney

General's order, adopted the Prosecutor's arguments and properly

focused on the issues evincing control, stating:

 The checks didn't come from them. Their
 supervision didn't come from them. The
 direction didn't come from them. Their day-
 to-day assignments didn't come from them. And
 it is a hybrid of a management structure, but
 it . . . was . . . the court's perspective
 [of] that agreement, . . . [which] created the
 supersession executive was an example of
 articulating responsibility without really
 articulating authority. A prosecutor couldn't
 have called . . . plaintiff . . . and told him
 to do something. Venegas would have had to
 go through the chief himself. It's the
 creation of . . . a managerial overlay with
 no line authority, with no line
 responsibility. . . . Even considering
 [plaintiff]'s arguments, which are . . . not
 sufficient to carry the day in terms of any
 responsibility on the part of the Camden
 County Prosecutor's Office.

 Perhaps the findings could have been more detailed, but our

review of the record and the applicable law leads to the conclusion

the supercession order and the Freeholders' execution of the

consulting agreement with Venco did not create a legally

 13 A-3676-14T1
recognizable employment relationship between the Prosecutor and

the municipal police officers, which must be present for plaintiff

to pursue an action under the LAD. See Thomas, supra, 386 N.J.

Super. at 594 ("[T]he lack of an employment relationship between

the plaintiff and the defendant will preclude liability.").

 Importantly, the consulting agreement, executed by the

Freeholders, generally identified the scope of services provided

without differentiation for the Prosecutor, the Department, and

the City. As the motion judge found, plaintiff offers no facts

showing the Prosecutor exercised authority over his employment

sufficient to satisfy a conclusion the Prosecutor was his de facto

employer. Venegas, in providing daily management, reported to the

Chief and the City. The record contains no evidence the Prosecutor

was involved with the search of plaintiff's office, the selection

of officers for training and promotion opportunities, the day-to-

day affairs of the Department, or plaintiff's suspension or

termination. During his deposition, plaintiff agreed no acts by

the Prosecutor formulated the alleged discrimination stated in his

complaint. Rather, the allegations in the complaint, as supported

by the record, make clear the conduct undergirding his claim of

hostile work environment was attributed to Venegas, the City

officials, and the Chief of Police.

 14 A-3676-14T1
 Although the Prosecutor received a copy of Venegas'

memorandum discussing plaintiff's transfer, the memorandum

represents a memorialization of a meeting between plaintiff,

Venegas, plaintiff's three operations captains, and the Manager

of Public Information, who made the decisions. The Prosecutor was

never asked and never actually investigated any complaints

regarding plaintiff's performance, or alleged conduct warranting

discipline.

 Accordingly, on these limited proofs, we cannot reach the

legal conclusion asserted by plaintiff that the Prosecutor stepped

into the shoes of the City and served as his de facto employer.

The Prosecutor exercised no acts of control over plaintiff's

employment, and plaintiff offered no evidence the Prosecutor

dictated the terms, conditions, discipline, and privileges of his

employment. Summary judgment was properly granted dismissing

plaintiff's complaint against the Prosecutor. Thomas, supra, 386

N.J. Super. at 594.

 B.

 Turning to claimed trial errors, plaintiff maintains the

trial judge erroneously granting an in limine motion filed by the

City and its employee defendants, seeking to bar evidence regarding

Venegas' alleged discriminatory conduct toward plaintiff and other

officers, once plaintiff voluntarily dismissed Venegas from the

 15 A-3676-14T1
suit. The City argued it did not hire Venegas, and therefore it

had no liability if he committed acts of discrimination.

 Plaintiff's claims against the remaining defendants were for

retaliation. Specifically, he alleged they failed to take action

when plaintiff complained of Venegas' acts of discrimination and

suffered discipline and ultimately termination as a result.

 The LAD makes it illegal "[f]or any person to
 take reprisals against any person because that
 person has opposed any practices or acts
 forbidden under this act[.]" N.J.S.A. 10:5-
 12(d). . . . When the claim arises from
 alleged retaliation, the elements of the cause
 of action are that the employee "engaged in a
 protected activity known to the [employer,]"
 the employee was "subjected to an adverse
 employment decision[,]" and there is a causal
 link between the protected activity and the
 adverse employment action. Woods-Pirozzi v.
 Nabisco Foods, 290 N.J. Super. 252, 274 (App.
 Div. 1996). In addition, in order to recover
 for LAD retaliation, plaintiff must also
 demonstrate that the original complaint was
 both reasonable and made in good faith.
 Carmona v. Resorts Int'l Hotel, Inc., 189 N.J.
 354, 373 (2007).

 [Battaglia v. United Parcel Serv., Inc., 214
 N.J. 518, 546-47 (2013).]

 Plaintiff relies on Woods-Pirozzi, supra, 290 N.J. Super. at

272-73, to support his argument the City, as his employer, was

responsible for acts by Venegas, despite his contractor status,

because it knew or should have known of his discriminatory conduct

and failed to implement corrective action. Plaintiff urges

 16 A-3676-14T1
evidence of Venegas' conduct is relevant and admissible to show

the City's failures.

 Woods-Pirozzi reviewed the plaintiff's claims of sexual

harassment by the plaintiff's supervisor and by an independent

contractor. Id. at 260-63. Drawing on federal Title VII

regulations, this court concluded: "An employer that knows or

should know its employee is being harassed in the workplace,

regardless of by whom, should take appropriate action." Id. at

269. The facts require examination of "the extent of the

employer's control and any other legal responsibility which the

employer may have with respect to the conduct of such non-

employees." Id. at 268.

 The record shows the City had no control over Venegas. He

was hired by the County, which, by order of the Attorney General,

imposed its oversight for matters involving management and control

of the Department. There is no dispute regarding this fact, which

creates a vital distinction between this matter and the facts in

Woods-Pirozzi.

 The trial judge did not preclude plaintiff from presenting

testimony regarding alleged retaliatory actions by the City, Chief

Thomson, Venegas and Jones-Tucker. He argues, however, it was

impossible to present a retaliation case without referencing the

conduct he complained of by Venegas. These defendants counter,

 17 A-3676-14T1
asserting plaintiff's proofs required he show he voiced complaints

in good faith with a reasonable belief Venegas was discriminating

against him, and defendants engaged in an adverse employment

action. They assert he was not impeded by the trial judge's

evidentiary ruling from presenting these facts. A review of the

extensive trial record bears out defendants' position.

 Numerous witnesses, including plaintiff, testified at length

regarding complaints he voiced to Jones-Tucker, the City, and

Chief Thomson, which amounted to discrimination. The jury

evaluated this evidence and concluded plaintiff's complaints did

not rise to racial discrimination or retaliation.

 Finally, we have considered plaintiff's claim the trial judge

improperly applied N.J.R.E. 404(b) to exclude evidence of another

officer's similar suit against the City, which claimed Venegas had

also discriminated against him because he was Caucasian. We reject

the arguments as unpersuasive and conclude the trial judge did not

abuse his reasoned discretion.

 Affirmed.

 18 A-3676-14T1